# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### GAINESVILLE DIVISION

| | |
|---|---|
| THOMAS CHASTAIN, EMMA CHASTAIN, and JONATHAN V. DUNN, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Civil Action No. |
| v. | 2:23-cv-160-RWS |
| BLUE LINE SOLUTIONS, LLC, | |
| Defendant. | |

## **ORDER**

This case comes before the Court on Defendant Blue Line Solutions, LLC's Motion to Dismiss [Dkt. 11] Plaintiffs' Amended Class Action Complaint [Dkt. 7], pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The briefing is complete, and the matter is ripe for disposition.  [Dkts. 14, 15].

# BACKGROUND[1]

This case arises out of Plaintiffs' contention that Defendant is collecting unauthorized and excessive fees pursuant to O.C.G.A. § 40-14-18, which is referred to as the "School Zone Electronic Enforcement Statute."  The named Plaintiffs are individuals who were either captured by an automated camera personally driving above the school zone speed limit (or who owned and registered a vehicle captured on camera).  Plaintiffs subsequently received citations for violating § 40-14-18.

Defendant Blue Line Solutions, LLC ("Blue Line") operates the automated cameras or Automated Speed Enforcement Systems utilized throughout the State of Georgia to enforce the speed limit in school zones, including in the counties where citations were issued to Plaintiffs.  [CAC ¶ 3].

Plaintiffs challenge local law enforcement agencies' reliance on Blue Line – a private, for-profit, out-of-state entity -- to process and collect payment for violations of the statute.  To clarify, Plaintiffs do not dispute that Section 40-14-18 provides for the use of photographically recorded images to document and enforce

---

[1] The facts recited herein are taken from the Amended Class Action Complaint ("CAC") [Dkt. 7], filed September 26, 2023, as well as the exhibits attached to the CAC. The facts alleged within the CAC are accepted as true for purposes of the Court's Rule 12 analysis unless otherwise contradicted and noted by the Court.

speeding violations in school zones during school hours. § 40-14-18(a)(1) and (a)(3).  Rather, the focus of Plaintiffs' CAC is how § 40-14-18 is being enforced.

### Representative Plaintiffs

**The Chastains**

On March 7, 2023, Plaintiff Thomas Chastain was issued a "Notice of Citation" under § 40-14-18 "purportedly by the Tallulah Falls Police Department" stating that a camera took photographs of Thomas Chastain's automobile traveling 58 miles per hour in a school zone with a speed limit of 45 miles per hour.  [CAC, ¶¶ 2, 6, 7, 36 and Exhibit A].[2]  The Chastain Citation is pictured on the page below:

---

[2] The Chastains received a copy of the Citation on or about March 25, 2023. [CAC, ¶ 6].  The Chastains received a second copy of the Citation requesting payment by May 25, 2023.  [CAC, ¶ 10 and Exhibit C].



**TOWN OF TALLULAH FALLS**
**POLICE DEPARTMENT**
**3903 VOLUNTEER DR SUITE 400**
**CHATTANOOGA, TN 37416**

## NOTICE OF CITATION



| Citation Number | |
|---|---|
| Plate Number | |

### Notice of Citation Information

**Due Date: 04/24/2023**          **Amount Due >> $100.00**

Please take notice that the vehicle described and pictured herein was photographed violating public safety by exceeding the speed limit in a school zone during times defined in O.C.G.A 40-14-18. Therefore, under Georgia State Law and local ordinance, as the registered owner(s) or lessee, you are liable for the Civil Monetary Penalty. If paid by the due date, the Civil Monetary Penalty is $75.00 for first offense and $125.00 for subsequent offenses, plus a $25.00 Processing Fee. This combined total for the Civil Monetary Penalty is $100.00. No points will be assessed against your driver's license. Information about how to contest or file an affidavit to disclaim liability is on the reverse. WARNING: Failure to pay the Civil Monetary Penalty or to contest in a timely manner shall waive any right to contest liability. Please call 1-855-252-0086 regarding payment.

**Registered Owner:**

Pd 75.00
04/28/2

THOMAS DANIEL CHASTAIN

| ON (DATE) 03/07/2023 | AT TIME 2:44:18 pm | LOCATION OF VIOLATION AND SYSTEM SR16 SB 2 |
|---|---|---|
| ISSUE DATE 03/25/2023 | | DUE DATE 04/24/2023 |

**NAME**
THOMAS DANIEL CHASTAIN

**STREET ADDRESS**

| CITY | STATE GA | ZIP CODE |
|---|---|---|
| VEHICLE YEAR 2021 | VEHICLE MAKE JEEP | |
| VEHICLE LICENSE PLATE NUMBER | | STATE GA |

Based upon inspection of photographically recorded images, the owner's motor vehicle was operated in disregard or disobedience of the speed limit in the marked school zone and that such disregard or disobedience was not otherwise authorized by law.

| IN VIOLATION OF: O.C.G.A. 40-14-18 | POSTED SPEED 46 | DETECTED SPEED 56 |
|---|---|---|

I am a certified peace officer employed by a law enforcement agency authorized to enforce the speed limit of the school zone. Based upon inspection of photographically recorded images, the owner's motor vehicle was operated in disregard or disobedience of the speed limit in the marked school zone and that such disregard or disobedience was not authorized by law.

| SWORN TO OR AFFIRMED BY REVIEWING OFFICER | Signature | Date 03/25/2023 | Badge # |
|---|---|---|---|
| Elrod, Tonya | | Ver | 701 |





---

**\*Please return this portion with your payment\***

THOMAS DANIEL CHASTAIN

☐ Please check box if address is incorrect or has changed, and indicate change(s) above.

**TALLULAH FALLS POLICE DEPARTMENT**
**PHOTO SPEED CITATION**
**PAYMENT PROCESSING CENTER**
**3903 VOLUNTEER DR SUITE 400**
**CHATTANOOGA, TN 37416**

For frequently asked questions and/or to make a payment, please visit:
**WWW.VIOLATIONPAYMENT.NET**
Use your Citation Number and Plate Number to logon.

| ACCEPTED CREDIT/DEBIT CARDS |
|---|
| $4.90 CHARGE ADDED TO ALL CREDIT/DEBIT CARD PAYMENTS. |

DISCOVER          VISA

**IF PAYING BY PHONE**
Please call:          1-855-252-0086          TOLL FREE
$4.90 CHARGE ADDED TO ALL CREDIT/DEBIT CARD PAYMENTS.

If paying by check, please make check or money order payable to the
**TOWN OF TALLULAH FALLS.**
Do not mail cash or credit card information.
Enclose remittance slip and check.

| CITATION DATE | PAY THIS AMOUNT | CITATION # |
|---|---|---|
| 03/25/2023 | $100.00 | |

| PAY BY: 04/24/2023 | AMOUNT PAID $ 75,00 |
|---|---|

04 10019461 010000 01 5

4

[CAC, Exhibit A].

Plaintiff Emma Chastain, Thomas's spouse, was driving the 2021 Jeep that is the subject of the Citation. [CAC, ¶ 2]. As the registered owner of the vehicle, Thomas Chastain was responsible for the civil monetary penalty, represented in the Citation to be $100. [CAC, ¶ 7].

According to Plaintiffs, Blue Line did not include "a copy of a certificate sworn to or affirmed by a certified peace officer" with the Chastain Citation. [CAC ¶ 10]. On information and belief, no officer was administered an oath by a person authorized to administer oaths verifying the violation asserted in the Citation sent by Blue Line to Mr. Chastain. [CAC ¶ 10].

On or about April 28, 2023, the Chastains paid $75 of the "$100 Civil Monetary Penalty" solicited by Blue Line by check payable to "Town of Tallulah Falls." [CAC, Exhibit B]. The check was made payable to "Town of Tallulah Falls," but was deposited by Blue Line in an account maintained by Blue Line in Chattanooga, Tennessee. [CAC, ¶ 9]. According to the Chastains, payment was made after Thomas Chastain was threatened with imposition of a lien on the title to the automobile and deprivation of the use of his automobile. [CAC, ¶ 9].

**Jonathan Dunn**

On November 8, 2022, Plaintiff Jonathan Dunn was issued a "Notice of Citation" under the School Zone Electronic Enforcement Statute purportedly by the Chatham County Police Department. [CAC ¶¶ 4, 14, 37 and Exhibit E]. The Dunn Citation is shown on the page below:



**CHATHAM COUNTY**
**POLICE DEPARTMENT**
**3903 VOLUNTEER DR SUITE 400**
**CHATTANOOGA, TN 37416**

## NOTICE OF CITATION

| Citation Number | |
| --- | --- |
| Plate Number | |

**Notice of Citation Information**

**Due Date: 12/08/2022**          **Amount Due >> $100.00**

**Registered Owner:**

JONATHAN VICTOR DUNN



Please take notice that the vehicle described and pictured herein was photographed violating public safety by exceeding the speed limit in a school zone during times defined in O.C.G.A 40-14-18. Therefore, under Georgia State Law and local ordinance, as the registered owner(s) or lessee, you are liable for the Civil Monetary Penalty. If paid by the due date, the Civil Monetary Penalty is $75.00 for first offense and $125.00 for subsequent offenses, plus a $25.00 Processing Fee. This combined total for the Civil Monetary Penalty is $100.00. No points will be assessed against your driver's license. Information about how to contest or file an affidavit to disclaim liability is on the reverse. WARNING: Failure to pay the Civil Monetary Penalty or to contest in a timely manner shall waive any right to contest liability. Please call 1-855-252-0086 regarding payment.

| ON (DATE) 10/28/2022 | AT TIME 4:12:41 pm | LOCATION OF VIOLATION AND SYSTEM US HWY 80 East 2 |
| --- | --- | --- |
| ISSUE DATE 11/08/2022 | | DUE DATE 12/08/2022 |

| NAME JONATHAN VICTOR DUNN |
| --- |

| STREET ADDRESS |
| --- |

| CITY | STATE GA | ZIP CODE |
| --- | --- | --- |

| VEHICLE YEAR 2014 | VEHICLE MAKE TOYOTA |
| --- | --- |



| VEHICLE LICENSE PLATE NUMBER | STATE GA |
| --- | --- |

Based upon inspection of photographically recorded images, the owner's motor vehicle was operated in disregard or disobedience of the speed limit in the marked school zone and that such disregard or disobedience was not otherwise authorized by law.

| IN VIOLATION OF: O.C.G.A. 40-14-18 | POSTED SPEED 35 | DETECTED SPEED 48 |
| --- | --- | --- |

I am a certified peace officer employed by a law enforcement agency authorized to enforce the speed limit of the school zone. Based upon inspection of photographically recorded images, the owner's motor vehicle was operated in disregard or disobedience of the speed limit in the marked school zone and that such disregard or disobedience was not authorized by law.



| SWORN TO OR AFFIRMED BY REVIEWING OFFICER Carlson, Samantha | Signature  Date 11/08/2022  *Samantha Carlson* | Badge # 10359 |
| --- | --- | --- |

**'Please return this portion with your payment'**

JONATHAN VICTOR DUNN



☐ Please check box if address is incorrect or has changed and indicate change(s) above

**CHATHAM COUNTY POLICE DEPARTMENT**
**PHOTO SPEED CITATION**
**PAYMENT PROCESSING CENTER**
**3903 VOLUNTEER DR SUITE 400**
**CHATTANOOGA, TN 37416**



For frequently asked questions and/or to make a payment, please visit
**WWW.VIOLATIONPAYMENT.NET**
Use your Citation Number and Plate Number to logon

**ACCEPTED CREDIT/DEBIT CARDS**
$3.90 CHARGE ADDED TO ALL CREDIT/DEBIT CARD PAYMENTS.

**IF PAYING BY PHONE**
Please call:    **1-855-252-0086    TOLL FREE**
$3.90 CHARGE ADDED TO ALL CREDIT/DEBIT CARD PAYMENTS.

If paying by check, please make check or money order payable to the
**CHATHAM COUNTY POLICE DEPARTMENT.**
Do not mail cash or credit card information.
Enclose remittance slip and check

| CITATION DATE 11/08/2022 | PAY THIS AMOUNT $100.00 | CITATION # |
| --- | --- | --- |

| PAY BY:  12/08/2022 | AMOUNT PAID  $ |
| --- | --- |

04 10032369 010000 09 5

[CAC, Exhibit E].

On October 28, 2022, Dunn's 2014 Toyota was captured on camera traveling 48 miles per hour in a school zone with a speed limit of 35 miles per hour.  [CAC ¶ 14].  Dunn was driving the 2014 Toyota that is the subject of the citation.  [CAC ¶ 4].

The Dunn Citation advised that the 2014 Toyota captured speeding was registered to Dunn and rendered Dunn responsible for a "Civil Monetary Penalty" of $100 as well as an electronic processing fee – the "maximum electronic processing fee."  [CAC ¶ 15].  According to Plaintiffs, the Dunn Citation did not include "a copy of a certificate sworn to or affirmed by a certified peace officer." [CAC ¶ 17].  On information and belief, no officer was administered an oath by a person authorized to administer oaths verifying the violation asserted in Citation sent by Blue Line to Mr. Dunn. [CAC ¶ 17].

The Dunn Citation identified the acceptable methods of payment, including payment online or by phone via credit and debit card, and payment by check or money order via mail.  [CAC ¶ 37].  As seen above, the Dunn Citation included on its face the following language in two different locations:

$3.90 CHARGE ADDED TO ALL CREDIT/DEBIT CARD PAYMENTS. [CAC ¶ 37].

On or about January 29, 2023, Dunn paid the $100 "Civil Monetary Penalty" by credit card. [CAC ¶ 16]. The penalty charged to Dunn included a flat $25 "processing fee" and an additional $3.90 charge for the use of a credit card for payment. [CAC ¶ 16]. Dunn's total payment was $103.90. [CAC ¶ 16, Exhibit F]. Dunn alleges that his payment was not voluntary and that he had "misplaced confidence that the citation was from the Chatham County Police Department." Dunn further alleges that his payment was compelled under the threat of a lien on the title to his automobile and deprivation of the use of his automobile. [CAC ¶ 16].

### Amended Class Action Complaint

On August 17, 2023, Plaintiffs commenced litigation on behalf of a class of similarly situated individuals. Plaintiffs subsequently amended their complaint as a matter of course on September 12, 2023. [Dkt. 7]. Plaintiffs' Amended Class Action Complaint is brought on behalf of a putative class defined as:

> "All Georgia residents who have been issued a "Notice of Citation" pursuant to the School Zone Electronic Enforcement Statute, O.C.G.A. § 40-14-18 that was mailed by Blue Line Solutions from July 1, 2018, to the date of certification of a class."

[CAC, ¶ 27].

In the CAC, Plaintiffs assert claims against Blue Line alleging: Count I -- Money Had and Received; Count II -- Violation of the Georgia Racketeer

Influenced and Corrupt Organizations Act ("RICO"), O.C.G.A. § 16-14-1, *et seq.*[3];

Count III – Fraud and Deceit; and Count IV – Declaratory and Injunctive Relief,

28 U.S.C. § 2201, *et seq*.  In terms of the relief sought, Plaintiffs demand refund of

all unauthorized and excessive fees levied and collected by Blue Line, plus

damages, including actual, consequential, and nominal damages, trebled. Plaintiffs

also seek to recover pre-judgment interest and expenses of litigation, including

reasonable attorney fees. [CAC, at 26-27].

On October 10, 2023, Blue Line moved to dismiss the Amended Class

Action Complaint pursuant to Rules 12(b)(1) and 12(b)(6) asserting that Plaintiffs

lack Article III Standing and that the CAC fails to state a claim upon which relief

can be granted.  [Dkt. 11].

For the reasons set forth below, the Court finds that, although standing

exists, Plaintiffs' Amended Class Action Complaint does not survive Rule 12(b)(6)

scrutiny.

---

[3] Plaintiffs request that the Court certify the Class and appoint Plaintiffs as Class
Representatives and counsel for the named Plaintiffs (hopeful Class
Representatives) as counsel for the putative Class.  [CAC, at 27].

# DISCUSSION

Before addressing the question of Plaintiffs' standing and Defendant's Rule 12(b)(1) Motion, a review of the governing Georgia statute is prudent as well as an overview of Plaintiffs' theory of the case.

## I.    GA School Zone Electronic Enforcement Statute, § 40-14-18

For purposes of analyzing Blue Line's Motion to Dismiss, the pertinent statutory provision is § 40-14-18(b), the section on enforcement.  Under subsection (b):

(1) The owner of a motor vehicle shall be liable for a civil monetary penalty to **the governing body of the law enforcement agency** provided for in paragraph (2) of this subsection if such vehicle is found, as evidenced by photographically recorded images, to have been operated in disregard or disobedience of the speed limit within any school zone and such disregard or disobedience was not otherwise authorized by law.  **The amount of such civil monetary penalty shall be $75.00 for a first violation** and $125.00 for a second or any subsequent violation, **in addition to fees associated with the electronic processing of such civil monetary penalty which shall not exceed $25.00**[.] . . .

(2) A law enforcement agency authorized to enforce the speed limit of a school zone, **or an agent working on behalf of a law enforcement agency or governing body**, shall send by first class mail addressed to the owner of the motor vehicle . . .

(A) A citation for the alleged violation, which shall include the date and time of the violation, the location of the infraction, the maximum speed at which such motor vehicle was traveling in photographically recorded images, the maximum speed applicable within such school zone, the civil

warning or the amount of the civil monetary penalty imposed, and the date by which a civil monetary penalty shall be paid;

(B) An image taken from the photographically recorded images showing the vehicle involved in the infraction;

(C) A website address where photographically recorded images showing the vehicle involved in the infraction and a duplicate of the information provided for in this paragraph may be viewed;

(D) A copy of a certificate sworn to or affirmed by a certified peace officer employed by a law enforcement agency authorized to enforce the speed limit of the school zone and stating that, based upon inspection of photographically recorded images, the owner's motor vehicle was operated in disregard or disobedience of the speed limit in the marked school zone and that such disregard or disobedience was not otherwise authorized by law;

(E) A statement of the inference [that] the trier of fact in its discretion [may] infer that [the registered owner of the vehicle at the time of the violation] was the driver of the vehicle at the time of the alleged violation. . . and of the means specified . . . by which such inference may be rebutted;

(F) Information advising the owner of the motor vehicle of the manner in which liability as alleged in the citation may be contested through an administrative hearing; and

(G) A warning that failure to pay the civil monetary penalty or to contest liability in a timely manner . . .  shall waive any right to contest liability[.] . . .

Id. (emphases added).

In addition, Subsection (m) speaks to how the money collected from paid fines is to be allocated:

> The money collected and remitted to the governing body pursuant to paragraph (1) of subsection (b) of this Code section **shall only be used by such governing body to fund local law enforcement or public safety initiatives**.  This subsection shall not preclude the appropriation of a greater amount than collected and remitted under this subsection.

§ 40-14-18(m) (emphasis added).

## II.    Plaintiffs' Theory & Common Allegations

In hopes of providing a frame of reference for the substantive discussion, the Court highlights Plaintiffs' theory of the case, and certain underlying allegations common to each cause of action, including that: Blue Line had no authority to collect payment on the Citations issued as no agency relationship existed between Blue Line and either a "governing body" or "law enforcement agency" ("LEA"); that Blue Line's involvement in the enforcement of § 40-14-18 was unlawful; that the contracts entered into by Blue Line and Tallulah Falls and Chatham County are void as "forbidden gratuities" that run afoul of the Due Process Clause of the Georgia Constitution and due to the unlawful delegation of law enforcement duties in violation of § 40-14-2; that Blue Line hid its identity and used deception to collect payment (i.e., "unauthorized revenue") from Plaintiffs and other putative class members; and that the monies retained by Blue Line are excessive, i.e., $25 electronic processing fee per Citation, plus 35% of revenues generated from enforcement.

## III.    Article III Standing, FED R. CIV. P. 12(b)(1)

### A.  Legal Standard

Article III of the Constitution confines the reach of federal jurisdiction to "cases" and "controversies."  U.S. Const. art. III, § 2.  To demonstrate the "irreducible constitutional minimum" for Article III standing, a litigant must show three elements.  "First, the plaintiff must have suffered an injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) actual or imminent, not conjectural or hypothetical . . . .  Second, there must be a causal connection between the injury and the conduct complained of . . . .  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  Lujan v. Defenders of Wildlife, 112 S. Ct. 2130, 2136 (1992) (internal quotation marks and citations omitted).

"The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements."  Spokeo v. Robins, 136 S. Ct. 1540, 1547 (2016) (citation omitted).  Plaintiffs must "'clearly . . . allege facts demonstrating' each element."  Id. (quoting Warth v. Seldin, 95 S. Ct. 2197, 2215 (1975)); and see Hancock v. Urban Outfitters, Inc., 830 F.3d 511, 513 (D.C. Cir. 2016) (quoting Ashcraft v. Iqbal, 129 S. Ct. 1937, 1949–50 (2009)).

A motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) may attack jurisdiction facially or factually. Morrison v. Amway Corp., 323 F.3d 920. 924 n.5 (11th Cir. 2003). Here, the parties agree that Blue Line asserts a facial challenge. [Dkt. 14 at 12]. Where the attack is based on the face of the pleadings, the court accepts the allegations in the complaint as true and looks to whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction. Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990).

## B. Analysis

Blue Line first contends that Plaintiffs lack standing because they are unable to demonstrate any injury-in-fact. More specifically, Blue Line argues that it is undisputed that Plaintiffs violated § 40-14-18 by speeding and also admit their statutory obligation to pay the fine ($75) and processing fee ($25) *to someone* as a consequence of the violation. In other words, Plaintiffs complain that they should not have been required to pay Blue Line as opposed to directly paying the law enforcement agency.

As a secondary position, Blue Line contends that any injury Plaintiffs suffered was not caused by Blue Line but rather by their own conduct, namely, speeding in a school zone and failing to contest the Citations. Blue Line further

suggests with respect to Dunn, that any claimed injury related to the $3.90 credit card fee has no causal connection in that Dunn chose to pay by credit card.

Plaintiffs' response in opposition only speaks to Blue Line's primary injury-in-fact argument.

### 1. Injury-In-Fact

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, 136 S. Ct. at 1548 (quoting Lujan, 112 S. Ct. at 2136). An injury is "particularized" if it affects the plaintiff in a personal and individual way. Id. An injury is "concrete" if it actually exists. Id. In the standing context, merely pleading "facts from which we could imagine an injury sufficient to satisfy Article III's standing requirements" does not satisfy a plaintiff's burden. Tokyo Gwinnett, LLC v. Gwinnett Cnty, Ga., 2019 WL 5090365, at *6 (11th Cir. Oct. 11, 2019).

In support of their burden, Plaintiffs point the Court to its April 1, 2019 Order [Dkt. 30] issued in Brucker v. City of Doraville, Civil Action No.: 1:18-cv-2375-RWS. In Brucker, the undersigned denied a Motion to Dismiss filed by Defendant City of Doraville, requesting dismissal of Plaintiffs' complaint and asserting lack of standing. The four plaintiffs in Brucker challenged the City of

Doraville's ("the City") practice of including projected revenue from fines, fees, and forfeitures in its municipal budget.  All four plaintiffs were individuals who had been cited for various infractions by the City.  The Brucker plaintiffs argued that this practice created impermissible financial incentives for civil servants, including the City's municipal courts, prosecutors, and law enforcement officers, to generate revenue for the City and that the result was contrary to the Due Process Clause of the Fourteenth Amendment. The plaintiffs did not concede that the citations being complained of were authorized or that the City had the ability to enforce or issue the citations. The plaintiffs contested the practice as a whole.  In response to the City's position that the Brucker plaintiffs were merely voicing a generalized grievance (as opposed to a particularized and concrete injury-in-fact), the Court determined that the threat of injury was sufficient to supply standing.

Unlike Brucker, Plaintiffs here do not contest the validity or lawfulness of their Citations or assert that the enforcement of § 40-14-18 promotes corruption among law enforcement officials and/or other civil servant employees.[4]  Rather, Plaintiffs take issue with governing bodies and/or local law enforcement agencies

---

[4] Although Brucker is distinguishable on its facts, the Court finds Brucker instructive in terms of how to evaluate a potential threat of injury.  Notably, here, there is no claim brought against Tallulah Falls or Chatham County alleging institutional bias or impartiality due to financial interest.

using Blue Line – a third-party entity – to enforce and collect percentage-based fees when the private, for-profit, out-of-state entity is purportedly not authorized to do so by statute.

In the Amended Class Action Complaint, Plaintiffs point to the following allegations in support of Article III standing:

35. The electronic processing fee of the civil monetary penalty assessed to Plaintiffs and Class Members **exceeds the statutory amount authorized by O.C.G.A. 40-14-18(b)(1) in that it is an automatic, flat rate charge that does not reflect the actual cost incurred by Blue Line** for electronic processing of the civil monetary penalty payment.  Blue Line deceptively demanded $100 as "civil monetary penalty."  Blue Line levies an additional charge for the processing of credit card payments for the civil monetary penalty for which there is no statutory authorization.  These facts were not disclosed to Plaintiffs or Class Members. . . .

41.  Plaintiffs Thomas and Emma Chastain paid $75 of the solicited $100 by check made payable to the Town of Tallulah Falls, but cashed by Blue Line.  Plaintiffs have been subjected to additional collection efforts by Blue Line for $25, presumably for a "processing fee" and **threatened with referral of their motor vehicle to the Department of Revenue for nonrenewal of the registration and a prohibition of title transfer** of such motor vehicle within this state **for failure to pay the full amount** of the . . . "Civil Monetary Penalty". . . .

42. Although Plaintiffs Thomas and Emma Chastain paid the civil penalty by check made payable to the Town of Tallulah Falls, . . ., Blue Line included a charge of $25 to electronically process the civil monetary penalty. Blue Line did not disclose that it, and not Tallulah Falls, was cashing the check and retaining at least 35% of the payment.  **Because Mr. and Mrs. Chastain paid only the civil monetary penalty set by statute, Blue Line fraudulently and**

**deceptively extracted $26.25 not authorized by Georgia law from the $75 fine paid by the Chastains**. . . . [CAC, ¶ 42].

     44.  **Blue Line charged and collected $25 from Plaintiff Jonathan Dunn as an electronic processing fee and an additional $3.90 for electronic processing of his credit/debit card without statutory authority and without disclosing this lack of authority or factual support for it to collect and retain any of the charge.** Blue Line did not disclose that the 35% of the $100 "Civil Monetary Penalty" it collected from Mr. Dunn . . . was money illegally being retained by Blue Line. . . .  [CAC, ¶ 44].

     Viewing the factual allegations in Plaintiffs' favor, the Chastain Plaintiffs identify at least one particular and concrete financial injury – fees extracted by Blue Line (without express permission to do so) from monies paid by the Chastains intended to satisfy the $75 fine. [CAC, ¶ 42]. Plaintiffs further argue that Blue Line's referral of the Chastain Citation to the Georgia Department of Revenue constitutes an injury since a lien was imposed on Thomas Chastain's vehicle and that Plaintiffs were responsible for payment of fees associated with removing the lien and obtaining a new registration tag.  [Dkt. 14 – Pls. Resp. in Opp'n at 15, ¶ 34; CAC, ¶ 41].

     Regarding Plaintiff Dunn, he also alleges that his payment was not voluntary but rather prompted by the threat of a potential lien being imposed on his vehicle.

[CAC, ¶ 16]. Dunn also alleges that he was charged an additional $3.90 electronic processing fee in the absence of express statutory authority.[5]  [CAC, ¶ 44].

The Court finds that Plaintiffs have satisfied their burden to establish injury-in-fact.

### 2.  Causal Connection

Blue Line's next argument is that there is no causal connection between the alleged financial injury and the conduct Plaintiffs complain of (i.e., Blue Line's involvement).  First, Plaintiffs concede that they were speeding in a school zone and subject to being ticketed.  Secondly, Plaintiffs elected not to contest or challenge the Citations and both submitted at least a partial payment. The Chastains paid $75 towards the $100 total, and Dunn paid in full. And, concerning referral to the Georgia Department of Revenue, Blue Line argues that Plaintiffs were ultimately responsible for this consequence as well since Plaintiffs had the option to cure and simply pay the full amount on the Citation. See O.C.G.A. § 40-14-18(j).  Third, regarding Dunn, Blue Line argues that it was Dunn's choice to

---

[5] In terms of the "without prior disclosure" allegation, the Dunn Citation, in fact, discloses the additional $3.90 fee in the event of payment by credit or debit card. Because Plaintiffs' Dunn Citation Exhibit, *see supra*, contradicts Plaintiffs' allegation on this point, the exhibit itself controls. See Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1206 (11th Cir. 2007) (citation omitted) (explaining that, "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern").

pay by credit card, and, therefore, Dunn cannot complain about the $3.90 credit card fee.

Blue Line's contention is well taken that Plaintiffs effectively waived their ability to litigate the instant claims given their respective decisions 1) not to contest liability in the first instance and 2) to pay the Citations.  Blue Line also argues that the Chastains lack standing to challenge the $25 processing fee because they did not pay it initially and only sent $75 for the fine itself (civil monetary penalty). Blue Line's arguments would be more forceful absent the threat of a referral to the Georgia Department of Revenue for nonpayment. The threat of incurring a lien in the event of nonpayment is likely sufficient to confer standing.

In addition to the contention that Blue Line lacked the authority to collect and process payment, Plaintiffs complain that Blue Line's failure to disclose its role (i.e., Blue Line receiving payment and depositing in a Blue Line bank account) as well as the nature of the fees being assessed (i.e., percentage-based versus actual cost of processing) was deceptive and led to payment by Plaintiffs and others similarly situated.[6]  Plaintiffs allege that Blue Line's less than

---

[6] The undersigned addresses Plaintiffs' argument concerning Blue Line's alleged failure to disclose the additional credit card fee on its merits, see *supra*.

transparent operation amounted to a fraud.  These facts are sufficient to show a

causal connection between the asserted financial injury and Blue Line's conduct.

For these reasons, the Court finds that Article III standing, in fact, is

sufficiently alleged to prosecute at least one of the causes of action within the

CAC.[7]  The Court next turns to the Rule 12(b)(6) arguments.

### IV.    Failure to State a Claim Upon which Relief May Be Granted, FED. R. CIV. P. 12(b)(6)

Rule 8 requires that a complaint contain "a short and plain statement of the

claim showing that the pleader is entitled to relief."  While this standard does not

require "detailed factual allegations," neither will mere "labels and conclusions"

suffice. Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007). Instead, the

complaint "must contain sufficient factual matter, accepted as true, to state a claim

to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949

(2009); John Mills, LLC v. Finley, 2020 WL 6073872, at *1 (N.D. Ga. Apr. 14,

2020) (citation omitted). A claim to relief is "plausible on its face" when the facts

support a "reasonable inference that the defendant is liable for the misconduct

---

[7] Blue Line posits that "[P]laintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2208 (2021) ("standing is not dispensed in gross").

alleged." <u>Iqbal</u>, 129 S. Ct. at 1949; <u>Gates v. Khokhar</u>, 884 F.3d 1290, 1296 (11th Cir. 2018).

When a party challenges a complaint under Rule 12(b)(6), the Court must "accept the facts alleged in the complaint as true, drawing all reasonable inferences in the plaintiff's favor." <u>Gates</u>, 884 F.3d at 1296. However, the Court ignores legal conclusions or factual contentions masquerading as legal conclusions. <u>Iqbal</u>, 129 S. Ct. at 1949. Indeed, the Court's "first task is to eliminate any allegations in [the Amended Class Action Complaint] . . . that are merely legal conclusions." <u>Am. Dental Ass'n v. Cigna Corp.</u>, 605 F.3d 1283, 1293 (11th Cir. 2010) (citing <u>Iqbal</u>, 129 S. Ct. at 1951). If the complainants state facts that plausibly support relief, the claim survives the motion and proceeds.

The Court now considers the merits of Defendant Blue Line's Motion to Dismiss.

## A. COUNT I -- Money Had and Received [CAC, ¶¶ 1-61, 62-73]

In Count One, Plaintiffs allege that Blue Line is liable under a money had and received theory.

"An action for money had and received[,] although legal in form, is founded on the equitable principle that no one ought to unjustly enrich himself at the expense of another, and is a substitute for a suit in equity. Thus, recovery is

authorized against one who holds the money of another which he ought in equity and good conscience to refund." Wyatt v. Hertz Claim Mgmt. Corp., 236 Ga. App. 292, 292 (1999) (quoting Time Ins. Co. v. Fulton–DeKalb Hosp. Auth., 211 Ga. App. 34, 35 (1993)); accord John Hancock Life Ins. Co. v. Andrews, 2017 WL 413259, at *6 (N.D. Ga. Jan. 31, 2017) (describing action for money had and received as "the functional equivalent of an action for unjust enrichment").

To recover on a money had and received claim, Plaintiffs must allege facts demonstrating that 1) Blue Line received monies justly belonging to Plaintiffs; and 2) Plaintiffs made a demand for repayment and the demand was refused.  See Wyatt, 236 Ga. App. at 292 (citation omitted); Andrews, 2017 WL 413259, at *6. The second element is not disputed.  [CAC, ¶ 71].  Thus, the only question is element one, whether Blue Line received monies justly belonging to Plaintiffs.[8]

The gist of Plaintiffs' cause of action is that Blue Line retained approximately 35% of the monies made payable to either Tallulah Falls or

---

[8] With respect to monies "justly belonging to Plaintiffs," Plaintiffs seem to argue that the monies paid and received by Blue Line (or at least a greater portion of those monies) were supposed to actually be going to the local law enforcement agencies as opposed to Blue Line. This seemingly overlaps or is intertwined with standing. Blue Line points to the ASE Agreements and argues that the only entity with standing is the party Blue Line is in privity with.  In any event, because the Court finds that Blue Line was authorized to receive payments, this issue need not be reached.

Chatham County and slated for public safety initiatives and that Blue Line reaped a substantial profit, in part, by charging unauthorized and excessive fees.  First and foremost, Plaintiffs take issue with Blue Line's authority and role (i.e., no agency).[9]

Plaintiffs complain that the Notices of Citation are misleading and deceptive in that the Citation demands payment of $100 as the "civil monetary penalty." [CAC, ¶¶ 35-37]. Plaintiffs complain that the Notices of Citation do not identify Blue Line as the true recipient of payment. Instead, the Notices of Citation direct payment to Tallulah Falls and Chatham County, yet, use the Chattanooga, Tennessee mailing address of Blue Line.  Plaintiffs challenge Blue Line's receipt and deposit of checks made payable to the local entities.  [Pls. Resp. in Opp'n at 18, CAC at 15-17].

Plaintiffs also complain that Blue Line did not charge fees based upon actual expenses or costs and instead charged a flat or percentage-based fee of $25.00 for the electronic processing of each Citation.  [CAC, ¶ 38]. Plaintiffs allege that Blue Line is being unjustly enriched at Plaintiffs' expense and that equitable principles

---

[9] Plaintiffs recognize that the question of agency, both the existence and scope, is "of great significance."  [Pls. Resp. in Opp'n, at 6].

require recovery of the unauthorized, excessive charges from Blue Line. [CAC, ¶¶ 70, 71].

Given the equitable nature of Plaintiffs' claim, the first inquiry is naturally whether Blue Line has authority to collect payments contemplated by § 40-14-18 from Plaintiffs, and, next, whether Blue Line received payments "justly belonging to Plaintiffs."

### 1. Blue Line's Authority to Act

As previously noted, Plaintiffs allege that Blue Line is not "an agent working on behalf of a law enforcement agency or governing body" and therefore not authorized to collect payment for criminal violations under Georgia law. O.C.G.A § 40-14-18. Blue Line contends that its contractual agreement with the respective local entities grants its authorization. Blue Line points to the operative contractual agreements, its ASE System Agreements, as evidence of its authorization and agency. In response, Plaintiffs dispute the general agency of Blue Line.[10]

---

[10] The Court does not accept Plaintiffs' CAC's various legal conclusions, including, that Blue Line is not an agent of the City of Tallulah Falls nor of the Town of Tallulah Falls Police Department and is not an agent of Chatham County nor of the Chatham County Police Department. [CAC, ¶ 28].

Plaintiffs also contend that Blue Line's ASE Agreements are void as "forbidden gratuities" under Georgia's Constitution and as an improper delegation of law enforcement duties.  [CAC, ¶¶ 29, 30].  Both allegations are legal conclusions. The underlying factual allegation in both instances, namely, that Blue Line is getting paid outside of the confines of the law, is not supported by the record.[11]

Blue Line responds to Plaintiffs' forbidden gratuity argument in its Reply by pointing out that the word "gratuity" has been interpreted as a gift by the Georgia Supreme Court and that the court has held "that there is no gratuity when the state receives a substantial benefit in exchange for the use of public property."  [Reply, at 14].  Blue Line contends that the State of Georgia and the contracting LEAs received a substantial benefit in exchange for the monies paid to Blue Line.  See, e.g., Garden Club of Georgia v. Shackelford, 274 Ga. 653, 654 (2002). Blue Line also suggests that the Gratuities Clause of the Georgia Constitution does not allow a private plaintiff to inspect every contract granted to a private entity by a municipal subdivision and question the reasonableness of the payment bargained for. As for the reasonableness of the LEA, Plaintiffs acknowledge that the local

---

[11] As discussed in greater detail below, the Court finds that Blue Line, in fact, has authority to act.

governments received over $1.5 million in just over 13 months.  [Pl. Resp. in Opp'n at 2].

Plaintiffs provide no controlling authority to support their proposed construction of § 40-14-18 and the Georgia Constitution to prohibit Blue Line from entering into contracts with local entities and/or local police departments to issue citations, to collect and remit payment of the civil monetary penalty, to assess a processing fee per violation, and to receive compensation for services rendered.

### a. Agency & Delegation Is Permitted Under § 40-14-18

Section 40-14-18 contemplates that the governing body or local LEA may utilize third party agents to accomplish the goals and objectives identified in the statute.  For instance, § 40-14-18(b)(2)(A) authorizes an agent to send citations to the registered owners of the violating vehicles, and reads in pertinent part:

> A law enforcement agency authorized to enforce the speed limit of a school zone, **or an agent working on behalf of a law enforcement agency or governing body**, shall send [a citation for the alleged violation]. . . .

Beyond the citation itself, Subsection (b) authorizes "an agent working on behalf of a law enforcement agency or governing body" to send supporting materials (i.e., evidence packages) and resources, including instructions for how to contest and/or resolve the citation.

While Plaintiffs concede that § 40-14-18 allows for an agent to mail citations, Plaintiffs argue that, even if an agent, Blue Line is still not authorized under § 40-14-18 to collect payment of the statutory fine (civil monetary penalty) or electronic processing fees.  [Pls. Resp. in Opp'n at 6].  However, § 40-14-18(m)[12] appears to allow collection and remitting to the LEA, which implies that a third-party may be tasked with collecting and remitting.  [Reply, at 13 (The word "remit" means "to transmit (as in money).")].

The statutory definition of "agent" also undercuts Plaintiffs' position.

### b.  Blue Line as a Statutory "Agent"

The Court next considers Blue Line's position that it operates as an agent of the local entities and that its actions fall squarely within O.C.G.A. § 40-14-1.1.  Section 40-14-1.1(1) defines an "agent" as --

> [A] person or entity who is authorized by a law enforcement agency [LEA] or governing body to administer the procedures contained herein and:
>
> > (A)    Provides services to such law enforcement agency or governing body;

---

[12] Subsection (m) of § 40-14-18 provides the following:

The money **collected and remitted** to the governing body pursuant to paragraph (1) of subsection (b) of this Code section **shall only be used by such governing body to fund local law enforcement or public safety initiatives**. . . .

(B) Operates, maintains, leases, or licenses an automated traffic enforcement safety device; or

(C) Is authorized by such law enforcement agency or governing body to review and assemble the recorded images captured by the automated traffic enforcement safety device for review by a peace officer.

Id.

According to Blue Line, under the terms and conditions of its contracts, it provides the above-referenced services to the local entities and is authorized to do so, including collecting the monies on behalf of law enforcement. With respect to the scope of its authorization, Blue Line contends that its services include the operation of and leasing / licensing of its ASE Systems.

Significantly, Blue Line emphasizes the expressly stated purpose for its ASE System Agreements, specifically, operation of speed tracking devices to encourage compliance with § 40-14-2.[13]

---

[13] Plaintiffs' assertion that Blue Line's ASE Agreements are void as violative of § 40-14-2 is a legal conclusion. Section 40-14-2 provides in part:

(a) The law enforcement officers of the various counties, municipalities, . . . may use speed detection devices only if the sheriffs of such counties, or the governing authorities of such counties, or the governing authorities of such municipalities, . . . shall approve of and desire the use of such devices and shall apply to the Department of Public Safety for a permit to use such devices in accordance with this chapter.

(b) No county sheriff, county or municipal governing authority, . . . shall be authorized to use speed detection devices where any arresting

The Court agrees that, here, Blue Line is tasked with administering § 40-14-18 by Tallulah Falls/Chatham County and that § 40-14-18 permits Blue Line to do more than issue citations.

In addition to the statute, Blue Line relies on its ASE Agreements for authority.

### c.  The Parties' Agreement Contemplates Limited Agency

Blue Line has entered into substantially similar contracts referred to as "Automated Speed Enforcement System Agreements" ("ASE System Agreements") with the Town of Tallulah Falls and the Chatham County Police Department, plus other Georgia counties and local governments, to perform automated enforcement of the School Zone Enforcement Statute. [CAC ¶¶ 23-27, Exhibits H and I].[14]

---

officer or official of the court having jurisdiction of traffic cases is paid on a fee system. . . .

Id.  Subsection (c) sets the parameters for when a permit may be issued by the Department of Public Safety, with a focus on ensuring that speed detection devices are operated by registered or certified peace officers while qualifying that "an automated traffic enforcement safety device may be operated by an agent or registered or certified peace officers of the county sheriff, county, or municipality to which the permit is applicable. . ." and that "agents may operate automated traffic enforcement safety devices without such registrations or certifications." Id.
[14] The terms and conditions within the Blue Line - Chatham County and Blue Line – Tallulah Falls Agreements are essentially the same. The additional fee for payment by credit/debit card is $3.90 in the Blue Line – Chatham County

By way of example, Blue Line's contract with the City of Tallulah Falls [CAC, Exhibit H] provides that the "City [of Tallulah Falls] desires to use the ASE System to monitor excessive speeding infractions and other potential traffic violations, issue traffic notices of violation and evaluate traffic movement and safety[.]"

Plaintiffs direct the Court to Paragraph 19 of the ASE System Agreement and argue that this contract provision disavows agency altogether – that Blue Line simply cannot purport to be a general agent of Tallulah Falls or Chatham County.

Paragraph 19 of the Tallulah Falls Agreement contains the following provision:

**19. NO AGENCY**

The relationship between the parties shall be that of independent contractors, and the employees, agents and servants of either party shall in no event be considered to be employees, agents, or servants of the other party. **This Agreement shall not create an agency relationship between BLS and City** and neither party may incur any debts or liabilities or obligations on behalf of the other party**, except as specifically provided herein**.

[CAC ¶ 24, Exhibit H at 6 (emphases in CAC)].

---

agreement as opposed to $4.90 in the Tallulah Falls agreement. For convenience, the Court refers to the Tallulah Falls contractual terms in its analysis.

The Court agrees with Plaintiffs concerning the absence of general or broad purpose agency.[15]  Immediately following the statement, "This Agreement shall not create an agency relationship between BLS and City," Paragraph 19 carves out an exception by prohibiting either party from incurring "any debts or liabilities or obligations on behalf of the other party, ***except as specifically provided***."  The Agreement goes on to detail the terms and conditions of the parties' contractual relationship.  The Agreement, in fact, requires Blue Line to perform consistent with the terms and conditions of the contract and carry out the specific tasks identified therein and within § 40-14-18 on behalf of the governing body or local LEA.

Blue Line contends that "the type of agency existing here is more akin to a 'special agency' that springs by virtue of statute."  [Reply, at 6 (citing, e.g., <u>J.R. Lewis v. Citizens & Southern Nat'l Bank</u>, 139 Ga. App. 855, 858 (1976))].  In other words, Blue Line suggests it is a "special agent" delegated to perform a single act.  [<u>Id.</u>].  Both § 40-14-1.1(1) and the parties' ASE Agreement support Blue Line's claim that it functions as a special agent in this context.

---

[15] The Court also takes judicial notice that the distinction drawn above between "independent contractors" and "employees, agents and servants" – commonly known terms of art within the area of employment law -- appears to refer to employment status rather than disavow agency altogether.

Thus, contrary to Plaintiffs' theory that Blue Line's actions are unlawful, the facts alleged and exhibits to the CAC reveal, at minimum, that Blue Line has contractual authority to act on behalf of the local entities.

### d. The ASE System Agreement Contemplates Revenue Sharing Based Upon Services Rendered by Authorized Agents

The ASE System Agreements contemplate the sharing of revenue generated between Blue Line and the local entity it is in privity with, i.e., Town of Tallulah Falls and Chatham County Police Department.  And nothing within § 40-14-18 prohibits Blue Line being compensated for the services it provides.

With respect to fees and payment, the ASE System Agreement provides in pertinent part:

**6. FEES AND PAYMENT**

City shall pay BLS for all equipment, services and maintenance based on the Service Fee schedule indicated in Exhibit C.

. . .

**Exhibit C** states that:

Revenue of paid Notice of Liability shall be shared between the two parties:

The City's portion shall be **65%** of all paid Notice of Liabilities and BLS's portion shall be **35%** of all paid Notice of Liabilities.  No fees or charges will be assessed to the agency for non-paid violations.

BLS provides all ASE equipment, installation, wireless integration, & infrastructure.  **ASE System equipment and installation costs are**

**recovered by BLS in 12 equal monthly installments from net revenue generated and apportioned to BLS from revenue share. In the event the agreement is terminated by the City as allowed by Section 4.A.(I), prior to full recovery of equipment and installation costs, the City will be responsible for the balance**. . . .

**Fees Charged to Violators**

A credit card convenience fee of $4.90 to be charged to the violator using a credit card (unless prohibited by state statute) for violation payment paid via the Internet.  Such convenience fees shall not be collected by BLS during payment of violation and shall not be shared with the City or included in City's share of Revenue.

[CAC ¶ 25, Exhibit C at 12].

### e.  Electronic Processing Fee

Plaintiffs challenge the electronic processing fee (a flat, percentage-based fee of $25) charged by Blue Line on multiple grounds.[16]

### i.  Unauthorized by Law

First, Plaintiffs state that fees, fines, and costs imposed for violations of law must be authorized by the legislature.  [Pls. Resp. in Opp'n at 4]. Plaintiffs contend that the only processing fee authorized by § 40-14-18 is for the "electronic processing" of payment and nothing more. To support this proposition, Plaintiffs cite Jones v. Grady Cnty., Ga., 2014 WL 3965955 (M.D. Ga. Aug. 13, 2014).

---

[16] Plaintiffs also base Count III, alleging Fraud and Deceit, in part, on Blue Line's electronic processing fee or processing fee.

While <u>Jones</u> is easily distinguishable from the facts alleged here, the general

principal Plaintiffs cite <u>Jones</u> for is good law.

In <u>Jones</u>, plaintiff, a misdemeanor defendant in state court, challenged

implementation of an "administrative cost" in the amount of $700 assessed at

sentencing that was paid directly to the defendant county court. <u>Id.</u>, 2014 WL

3965955, at *1-2.  Grady County State Court personnel, i.e., the presiding judge,

designed and put into place the "administrative cost" scheme by revising the then-

existing sentencing disposition form and adding a category for administrative

costs. <u>Id.</u> The sole purpose for the administrative cost category was to generate

money for the county and to support the judge's pay increase. <u>Id.</u>, at *2-3. The

facts were undisputed in <u>Jones</u> that the judge had no authority, statutory or

otherwise, to begin charging an administrative cost to criminal defendants

prosecuted in Grady County to benefit the County and himself. <u>Id.</u>, at n. 2 ("The

Parties do not dispute that the 'administrative costs' were not authorized by law.").

Thus, Jones' claim alleging that the administrative cost was not statutorily

authorized and therefore unconstitutional under Georgia law survived defendants'

Rule 12(b)(6) motion to dismiss.

In this case, the $25 electronic processing fee charged by Blue Line is

expressly authorized within § 40-14-18.

36

### ii. Flat, Percentage-Based, Maximum Fee

Next, Plaintiffs allege that the $25 flat, percentage-based fee for electronic processing of payment exceeds the amount authorized in § 40-14-18(b)(1) in that the statute identifies $25 as the "maximum" processing fee as opposed to the actual cost of processing payment. [CAC, ¶ 64]. Plaintiffs contend that the $25 fee is not authorized for anything other than electronic processing (i.e., not to be imposed for payment by check as with the Chastains or other processing) and that the fee is grossly excessive. [CAC, ¶¶ 65, 66]. However, § 40-14-18(b)(1) does *not* state that the electronic processing fees are limited to the actual processing cost or that charging a flat or percentage-based fee (even in the maximum fee amount) is not permissible. Under the plain language of the statute, a maximum electronic processing fee of $25 is acceptable.

### f. Conclusion – Count I

Accepting the factual allegations within the CAC as true, viewing all reasonable inferences in Plaintiffs' favor, and disregarding Plaintiffs' legal conclusions regarding what § 40-14-18 may or may not allow, Plaintiffs' money had and received claim fails.

"[T]he common thread running through cases allowing recovery for money had and received is that the defendant came into possession of money of the

plaintiff improperly or through some mistake." <u>Gregg & Assocs., Inc. v. Lamm</u>, 2010 WL 11595749, at *3 (N.D. Ga. Mar. 11, 2010); <u>and see, e.g.</u>, <u>Dep't of Med. Assistance v. Hallman</u>, 203 Ga. App. 615, 616 (1992) (dismissing money had and received claim stating that, "[t]his is not a situation where money has been paid by mistake"); <u>Empire Oil Co. v. Lynch</u>, 106 Ga. App. 42 (1962) (true owner paid money for a purpose for which it was not used by the recipient, but was instead misappropriated by the recipient); <u>Dep't Public Health v. Perry</u>, 123 Ga. App. 816 (1971) (cognizable money had and received claim where nursing home compensated erroneously after losing required Medicaid certification). The <u>Wyatt</u> decision cited by Plaintiffs, which is a typical unjust enrichment fact pattern, illustrates this point.[17]  [Pls. Resp. in Opp'n  at 18].

As discussed herein, Blue Line was authorized by Tallulah Falls and Chatham County to administer and aid in enforcement of § 40-14-18.  The Court finds that, accepting the factual allegations in Plaintiffs' CAC as true, Blue Line's implementation of the automated speed enforcement system is consistent with the

---

[17] <u>See Wyatt</u>, 236 Ga. App. at 632.  In <u>Wyatt</u>, the defendant signed an agreement entitling her to payment of $1,500 from a car company but the company mistakenly sent her a check for $15,000, which the defendant cashed. The company later informed defendant of the error, but she refused to return the overpayment. The car company plaintiff prevailed at summary judgment on its money had and received claim because the written agreement "conclusively establishe[d]" that defendant was entitled to only $1,500. <u>Id.</u> at 632.

statutory objective of § 40-14-18.  Specifically, the Court finds that enforcing the traffic laws in school zones falls squarely within "public safety initiatives." § 40-14-18.  Blue Line's compensation for providing these services is a matter of contract and is not prohibited by a plain reading of § 40-14-18.

Moreover, the lynchpin for Plaintiffs' money had and received claim, as well as the other claims, is that Blue Line was not (or could not be) acting as an agent. Accepting Plaintiffs' factual allegations, however, the Court finds, as a matter of law, that Blue Line was, in fact, acting as an agent and that its agency was both permissible under § 40-14-18 and supported by the parties' respective contractual agreements.  The issues presented by the allegations within Plaintiffs' CAC and raised by Blue Line's Motion are not driven by facts or fact-dependent. This is purely a legal determination.

In this case, payments were not made by mistake as Plaintiffs admit liability for speeding and recognize that § 40-14-18 requires payment of a civil monetary penalty of at least $75, allows for a processing fee up to $25, resulting in a total cost/payment not to exceed $100.  There is no viable factual claim or reasonable inference that can be drawn that the monies paid were misappropriated by Blue Line in that the ASE Agreement's expressly stated purpose (i.e., operation of speed tracking devices to encourage compliance with § 40-14-2) is consistent with § 40-

18-14.  As previously stated, the fact that Blue Line charged a flat or percentage-based fee was Blue Line's right and prerogative, as was Tallulah Falls / Chatham County's agreement as to those terms. Accepting Plaintiffs' factual allegations as true, the only facts not known to Plaintiffs at the relevant time is that Blue Line rather than Tallulah Falls or Chatham County would receive and remit payment (or the portion of payment) to the governing body or LEA.[18]  Plaintiffs challenge the terms agreed upon by Blue Line and Tallulah Falls / Chatham County and, thus, seek to usurp the capacity and authority to contract.  There is nothing in equity that requires Plaintiffs' knowledge or approval of the statutorily authorized contractual arrangement between Blue Line and the local entities.

The Court finds that Plaintiffs fail to allege sufficient facts to plausibly state a cognizable action for money had and received.

Blue Line's Motion to Dismiss is <u>granted</u> as to Count I.

---

[18] In their Response, Plaintiffs attempt to argue that Blue Line, "at most raises an issue of disputed fact."  [Dkt. 14 at 18].  Plaintiffs describe or summarize their money had and received claim as follows: "The Amended Complaint alleges that checks written to Tallulah Falls were, in fact, received by Blue Line and cashed by Blue Line, with Blue Line retaining a substantial portion of the money."  [<u>Id.</u> (citing CAC, at 15-17)].

**B. COUNT II -- Georgia RICO [CAC, ¶¶ 1-61, 74-87]**

In Count II, Plaintiffs claim that Blue Line's conduct is (and Notices of Citation are) deceptive, that Blue Line "deceptively poses" and "masquerades as a law enforcement agency," and that Blue Line's actions are illegal, fraudulent, and actionable under the Georgia civil RICO statute.  In support, Plaintiffs reallege that there was no agency relationship [CAC, ¶ 77], that Blue Line had no authority to collect and remit payments in connection with § 40-14-18(b), and that Blue Line used deception to collect the "unauthorized revenue."  Plaintiffs also point to the profit Blue Line made during the relevant period, which was approximately $5 million.  [CAC, ¶ 83]. Blue Line moves to dismiss for failure to establish a pattern of racketeering activity.

**1. § 16-14-4**

Georgia's RICO Act is intended to "apply to an interrelated pattern of criminal activity motivated by or the effect of which is pecuniary gain or economic . . . threat or injury. . . ."  O.C.G.A. § 16-14-2; <u>Williams Gen. Corp. v. Stone</u>, 279 Ga. 428, 430 (2005).  The statute "prohibits a person from obtaining money or participating in an 'enterprise' through a 'pattern of racketeering activity.'" <u>Z-Space, Inc. v. Dantanna's CNN Ctr., LLC</u>, 349 Ga. App. 248, 252 (2019) (quoting O.C.G.A. § 16-14-4 (a), (b)).

"The term 'racketeering activity' means the commission of at least one of the enumerated types of crimes listed in the RICO statute, also known as predicate offenses." <u>Id.</u> (quoting O.C.G.A. § 16-14-3(5)(A), (C)); <u>see also</u> <u>Jordan v. Tri County AG, Inc.</u>, 248 Ga. App. 661, 666 (2001). As is relevant here, a "pattern" means "[e]ngaging in at least two acts of racketeering activity." O.C.G.A. § 16-14-3(4)(A); <u>accord</u> <u>Dalton v. State Farm Fire and Cas. Co.</u>, 2013 WL 1213270, at *3 (N.D. Ga. Mar. 22, 2013) ("[T]o state a claim under [O.C.G.A. § 16–14–4], a claimant must allege at least two predicate acts of conduct that are crimes chargeable by indictment under certain laws of the state of Georgia or the United States.").

## 2. Alleged Criminal Predicate Offenses

Plaintiffs' CAC alleges that Blue Line committed mail fraud, theft by deception, and impersonated a police officer and that these acts supply the requisite RICO predicates.[19]  Plaintiffs assert that they and other putative class members are "the intended victims" of Blue Line's pattern of racketeering activity since they were mailed a citation by Blue Line and subjected to collection efforts for civil monetary penalties and excessive fees.  [CAC, ¶ 79].  Plaintiffs allege that "Blue

---

[19] To the extent Plaintiffs assert that Blue Line's application of § 40-14-18(m) is a criminal predicate, it is not defined as a predicate under the Georgia RICO statute.

Line has profited in excess of five million dollars by collecting excessive electronic processing fees, retaining unauthorized percentages of the statutory civil monetary penalty and charging additional credit card processing fees on top of the electronic processing fees. . . ."  [CAC, ¶ 83].

Having reviewed the allegations in the CAC, the Court finds that Plaintiffs do not allege sufficient facts to support the predicate offenses and therefore cannot establish a pattern of racketeering activity.

### a.  Mail Fraud, 18 U.S.C. § 1341

Mail fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails in furtherance of that scheme. Feldman v. Am. Dawn, Inc., 849 F.3d 1333, 1343 (11th Cir. 2017), cert. denied, 138 S. Ct. 322 (2017); see also O.C.G.A. § 16-14-3 (5)(C); 18 U.S.C. § 1341 (mail fraud). "In all averments of fraud or mistake, the circumstance constituting fraud or mistake shall be stated with particularity." O.C.G.A. § 9-11-9 (b). A scheme to defraud requires proof of a material misrepresentation, or the omission or concealment of a material fact calculated to deceive another out of money or property. United States v. Maxwell, 579 F.3d 1282, 1299 (11th Cir. 2009).

Likewise, allegations of mail fraud in a civil RICO action must not only be pled in accordance with the heightened pleading standard of O.C.G.A. § 9-11-9 (b), but also are required to include such matters as the time, place, and content of the alleged misrepresentations, as well as who made the alleged misrepresentations and to whom.  Z-Space, Inc., 349 Ga. App. at 254 (citing American Dental Assn. v. Cigna Corp., 605 F.3d 1283, 1291-1292 (11th Cir. 2010)).

Having reviewed the CAC, the Court finds that Plaintiffs fail to identify any "material misrepresentation, or the omission or concealment of a material fact calculated to deceive[.]" Maxwell, 579 F.3d at 1299. The "facts" Plaintiffs identify as being fraudulent include:

- Blue Line "masquerading as LEA"

- Blue Line falsely representing that an authorized LEA certified and/or affirmed speeding violation in an affidavit

- Blue Line failing to disclose that it lacks authorization to assist with enforcement of § 40-14-18 (which is a legal conclusion and not credited)

- Blue Line failing to disclose its identity and that Blue Line is collecting and remitting payment to Tallulah Falls / Chatham County

[CAC, ¶¶ 74-87].

In opposing dismissal, Plaintiffs cite a Seventh Circuit decision in a criminal case upholding the sentencing judge's decision to depart upward based upon the defendant's use of mass marketing to perpetrate a fraud. See, e.g., United States v. Coe, 220 F.3d 573, 578 (7th Cir. 2000) (district court found that the defendants used the telephones and mails to induce a large number of persons to participate in their fraudulent scheme and that defendants' fraud violated the Senior Citizens Against Marketing Scams ("SCAMS") Act, 18 U.S.C. § 2325 *et seq.*). Plaintiffs state succinctly, "[p]osing as a governmental entity to obtain money and using the mails to do so is mail fraud." [Pls. Resp. in Opp'n at 19]. Based on the Court's findings regarding Blue Line's role as an agent, the facts in Coe are easily distinguished from the facts of the instant case.

In Coe, defendants perpetrated a three-year scam that entailed informing 55+ persons that they had won various prizes which could only be claimed by sending the defendants money for "taxes" and "fees" that had to be paid before the prizes could be awarded. Coe, 220 F.3d at 577. As part of this scheme, defendants occasionally represented themselves as IRS agents to their intended victims. Id. Several victims who sent money were contacted more than once or by more than one defendant. Id. For example, one elderly woman sent the defendants $34,480 in fourteen separate wire transfers. Id. The Coe defendants were not in privity with

45

the IRS and the individuals / alleged victims in <u>Coe</u> were not admittedly guilty of any IRS violation or procedure.  In other words, <u>Coe</u> was a straight-up scam or intentional scheme to defraud.  Unlike the facts of this case, there was no legitimate basis for the intended victims to be contacted by the IRS or defendants.  Concerning Blue Line's scienter and intent to defraud, the Court is not persuaded by Plaintiffs that there are factual issues to be developed and resolved after discovery.  Again, Plaintiffs' allegation depends on their contention that Blue Line was not acting as an agent for Tallulah Falls/Chatham County.  The Court's finding that Blue Line was acting as their agent negates a critical element of Plaintiffs' claim.  Thus, Plaintiffs' conclusory allegation that Blue Line was acting nefariously is unsupported by facts.

The actual facts that are alleged by Plaintiffs do not state a claim for mail fraud.

### b.  Theft By Deception, O.C.G.A. § 16-8-3

The second alleged predicate is theft by deception in violation of O.C.G.A. § 16-8-3.  Georgia's theft by deception statute reads in pertinent part:

(a) A person commits the offense of theft by deception when he obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property.

(b) A person deceives if he intentionally:

(1) Creates or confirms another's impression of an existing fact or past event which is false and which the accused knows or believes to be false;

(2) Fails to correct a false impression of an existing fact or past event which he has previously created or confirmed;

§ 16-8-3.  Under the statute, "'[d]eceitful means' and 'artful practice' do not . . . include falsity as to matters having no pecuniary significance, or exaggeration by statements unlikely to deceive ordinary persons in the group addressed." § 16-8-3(c).

Plaintiffs' theft by deception claim relies upon Blue Line's intent to deceive. To be clear, intentionality (an intent to deceive) is required under § 16-8-3. Ellerbee v. State, 256 Ga. App. 848, 851 (2002) ("[t]he gravamen of theft by deception lies in obtaining the property of another by intentionally creating a false impression as to an existing fact or past event"). "Reckless disregard of the truth cannot be used to prove theft by deception; instead, there must be knowledge, or at least the belief, that the impression given to the victim is false."[2] 19 GA. JUR. § 21:34.

Again, Plaintiffs' allegations depend on their assertion that Blue Line was not acting as the agent of Tallulah Falls/Chatham County.  The Court having found otherwise, the factual allegations do not plausibly support an action for fraud, and

the Court finds that Plaintiffs' theft by deception claim also fails as a purported predicate.

### c. Impersonating a Police Officer, § 16-10-23

The third alleged predicate offense is impersonation of a police officer. Pursuant to § 16-10-23, "[a] person who falsely holds himself or herself out as a peace officer, officer of the court, or other public officer or employee with intent to mislead another into believing that he or she is actually such officer" is guilty of impersonating an officer.  Id.

Plaintiffs' claim that Blue Line impersonated a police officer is premised, in part, upon Blue Line's failure to expressly disclose on the face of the Notice of Citation the specifics of its role and that Blue Line would be collecting payments made to local entities, remitting payment to Tallulah Falls / Chatham County, and retaining its fee.

Plaintiffs also allege that Blue Line falsely represented that the Notices of Citation were being reviewed and affirmed by an authorized law enforcement officer.  Plaintiffs contend that a supporting affidavit from law enforcement confirming the existence of a speeding violation is required by § 40-14-18(b)(2)(D).[20]  Plaintiffs allege that Blue Line "deceptively posed" as an LEA by

---

[20] The language at issue, Subsection (b)(2)(D), reads:

way of the misrepresentations within the Citation.  [CAC, ¶ 40].  Plaintiffs allege

that the Notice of Citation is deficient as a matter of law for failing to satisfy

statutory requirements.  In reply, Blue Line clarifies that no such affidavit

requirement exists. [Reply at 7-9]  Blue Line agrees that § 40-14-18(b)(2)(D)

provides for a reviewing law enforcement officer to either "swear" or "affirm" that

the violation is supported by the evidence, and that the Citations contain the

requisite certificate in the bottom left corner.  The Court does not accept as true

Plaintiffs' allegations contradicted by the exhibits attached and relied upon by the

CAC or the language found within the governing statute.  Griffin Indus., Inc., 496

F.3d at 1206 ("If the appended document, to be treated as part of the complaint for

all purposes under Rule 10(c), Fed. R. Civ. P., reveals facts which foreclose

recovery as a matter of law, dismissal is appropriate.") (citation omitted). The

Citations attached as exhibits to the CAC include a statement where "a certified

---

> A copy of a certificate **sworn to or affirmed by** a certified peace
> officer employed by a law enforcement agency authorized to enforce
> the speed limit of the school zone and stating that, based upon
> inspection of photographically recorded images, the owner's motor
> vehicle was operated in disregard or disobedience of the speed limit in
> the marked school zone and that such disregard or disobedience was
> not otherwise authorized by law[.]

§ 40-14-18(b)(2)(D).  There is no mention of an affidavit or requirement that the
swearing or affirming be provided in a separate document.

peace officer" affirms that he has reviewed the evidence and found the subject vehicle "was operated in disregard or disobedience of the speed limit in the marked school zone."  [CAC, Exhibits A and E]. This affirmation meets the requirements of § 40-14-18(b)(2)(D).

At bottom, impersonation of a police officer unmistakably requires an intent to mislead, and there are no facts that reasonably support the inference Plaintiffs ask the Court to rely on.  Again, there is nothing in § 40-18-14 requiring an explanation as to how the payment ultimately gets to the governing body or LEA. The factual allegations within the CAC do not support Plaintiffs' claim that Blue Line administered § 40-14-18 with an intent to mislead.[21]

Lastly, allegations based on information and belief are inadequate in the context of a Georgia RICO action, which must be pled with specificity under FED. R. CIV. P. 9(b). Ambrosia Coal & Constr. Co. v. Pages Morales, 482 F.3d 1309, 1316 (11th Cir. 2007); U-Tec Constr., Inc. v. Phoenix Loss Control, Inc., 2022 WL 902727, at *3 (N.D. Ga. Mar. 28, 2022) ("Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity.").  In short, when Rule 9(b) applies, "pleadings generally cannot be

---

[21] Plaintiffs' claims related to an intent to mislead are pled "upon information and belief."  [CAC, ¶¶ 10, 17].

based on information and belief [.]" <u>Glock</u>, 247 F. Supp. 3d at 1314. "Bald or otherwise conclusory allegations will not suffice." <u>Id.</u>

The Court finds that violation of § 16-10-23 for impersonation of a police officer may not be relied upon as a predicate offense.

### g. Conclusion – Count II

Because Plaintiffs cannot allege facts in support of the alleged predicate offenses, and thereby fail to adequately allege a pattern of racketeering activity, the Georgia Civil RICO claim fails.

Blue Line's Motion to Dismiss is <u>granted</u> as to Count II.

## C. Count III – Fraud and Deceit [CAC, ¶¶ 1-61, 88-95]

In Count III, Plaintiffs allege fraud and deceit based upon alleged false and misleading representations and omissions made by Blue Line that Plaintiffs and others relied upon when making citation payments.[22]  Plaintiffs' fraud and deceit claim is duplicative of Counts I and II and merely recast as a separate tort.

Under Georgia law, a plausible fraud and deceit claim includes factual allegations that show "(1) [a] false representation made by the defendant; (2)

---

[22] Plaintiffs allege that Blue Line effectively impersonated law enforcement officers and LEAs.  Plaintiffs further allege and reassert the claim that Blue Line's maximum $25 electronic processing fee was not authorized and is thus illegal. Plaintiffs include no new factual allegations in support of this cause of action.

scienter; (3) an intention to induce the plaintiff to act or refrain from acting in reliance by the plaintiff; (4) justifiable reliance by the plaintiff; and (5) damage to the plaintiff." <u>City Dodge, Inc. v. Gardner</u>, 232 Ga. 766, 769 n.1 (1974).

As noted, Plaintiffs' fraud and deceit claim relies heavily on the same allegations as set forth in support of Counts I and II, namely, that § 40-14-18 "does not expand the meaning and scope of the civil monetary penalty to include Blue Line's costs associated with preparing the citation, mailing the citation and collecting the civil monetary penalty." [<u>See, e.g.</u>, CAC, ¶¶ 46, 81, 90]. Plaintiffs allege that they were "misled by Blue Line and paid penalties and fees misrepresented on the citations as owed to law enforcement" when Blue Line was actually collecting payment and retaining a portion "illegally." [CAC, ¶ 89]. Again, the Court is not required to accept legal conclusions within the CAC as true.

Blue Lines moves to dismiss Plaintiffs' fraud and deceit claim for the reasons already stated, namely, that Blue Line did not make any false representations, that Blue Line was authorized to issue the Citations / Notices of Violation and engage in other actions per its contractual relationship with the respective LEAs, and that its contractual relationship and in the administration of §

40-14-18 is both contemplated and authorized by the governing statutory

framework.

For the reasons previously discussed in connection with Counts I and II.

Blue Line's Motion to Dismiss is due to be <u>granted</u> as to Count III.

### D. Count IV – Declaratory and Injunctive Relief, 28 U.S.C. § 2201 [CAC, ¶¶ 1-61, 96-100]

In Count IV, Plaintiffs seek a judgment declaring that Blue Line's conduct in

collecting and retaining these funds violates Georgia law.  In addition, Plaintiffs

request prospective injunctive relief be imposed against Blue Line directing Blue

Line to stop collecting and retaining the challenged funds in order to avoid

irreparable injury to Plaintiffs and Class Members.  Plaintiffs acknowledge that

Count IV depends upon the same allegations relied upon to support Counts I, II,

and III.  [Pls. Resp. in Opp'n at 21].

The Declaratory Judgment Act is "an enabling Act, which confers a

discretion on courts rather than an absolute right upon the litigant." <u>Wilton v.</u>

<u>Seven Falls Co.</u>, 115 S. Ct. 2137, 2143 (1995) (citation and internal quotation

omitted); <u>James River Ins. Co. v. Rich Bon Corp.</u>, 34 F.4th 1054, 1058 (11th Cir.

2022).  It only gives the federal courts competence to make a declaration of rights;

it does not impose a duty to do so.  Brillhart v. Excess Ins. Co. of America, 62 S. Ct. 1173, 2142-43 (1942).[23]

Blue Line correctly argues that Plaintiffs' request for declaratory judgment and is based upon the same allegations as its other three causes of action.  The Court has already discussed why Counts I through III are not cognizable.

Aside from the conclusory allegations, Plaintiffs fail to identify *how* Blue Line's contractual arrangement with Tallulah Falls and/or Chatham County is unlawful or how its conduct violates § 40-14-18.  While Plaintiffs attempt to raise a due process issue and point the Court to Harper v. Professional Probation Services, Inc., 976 F.3d 1236 (11th Cir. 2020), the facts in Harper are readily distinguishable.[24]

---

[23] Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328, 1330–31 (11th Cir. 2005) (factors to consider).  In this case, the Court finds that 1) the State of Georgia has a strong interest in having the issues raised in the federal declaratory action decided in the state courts; 2) use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and 3) there is a close nexus between the underlying factual and legal issues and state law and/or public policy.

[24] The Eleventh Circuit's decision in Harper held that:

> "[A] for-profit probation administration company had an unconstitutional interest in enhancing probationers' sentences where it received money for every month they remained on probation. . . ."

The School Zone Enforcement Statute permits assistance by third-parties, sets a fine amount for the civil monetary penalty when the statute is violated, sets a maximum fee for electronic processing, and also discloses the additional cost for payment online or over the phone when paying with a credit or debit card.

Blue Line emphasizes the expressly stated purpose for its ASE System Agreements, specifically, operation of speed tracking devices to encourage compliance with § 40-14-2.  In other words, Blue Line is providing a service to local entities such as Tallulah Falls and Chatham County Police Department that is geared towards increasing public safety.  Plaintiffs' allegations to the contrary are conclusory and without factual support.

For example, Plaintiffs allege,

Upon information and belief, Blue Line does not install the ASE systems in areas with the highest number of school days and highest number of school hour vehicle crashes.  Instead, ASE systems are installed in school zones with the highest traffic volume.  Blue Line's ASE System [A]greements have a built-in incentive to maximize the issuance of citations while making public safety a less direct consideration.

_____

Brucker v. City of Doraville, 38 F.4th 876, 882–83 (11th Cir. 2022) (internal citations omitted).  The facts relied upon in Harper included allegations that the for-profit company "maximize[d] its profit by extending the length of probation, increasing the amount of fines from what was ordered at sentencing, and present[ing] unsworn and inadequate—or sometimes false—statements at probation review hearings."  Id. (internal quotation marks omitted).

[CAC, ¶ 46].  Plaintiffs then repeat the basis for attacking the $25 fee as prohibited by § 40-14-18.  This upon information and belief allegation concerning a "built-in incentive to maximize the issuance of citations" is insufficient.

The Court, in its discretion, declines to go behind the decisions of the local governments regarding proper placement of the ASE systems, particularly in the absence of any factual allegations that the systems are being placed in any areas that are not legitimate designated school zones.  Further, the Court declines to consider the propriety of the statutorily-authorized contractual arrangements entered into between local governing bodies and/ or local law enforcement agencies with Blue Line.

Blue Line's Motion to Dismiss is <u>granted</u> as to Count IV.

## CONCLUSION

For the foregoing reasons, the Court finds that Defendant Blue Line's Motion to Dismiss [Dkt. 11] Plaintiffs' Class Action Complaint [Dkt. 7] is meritorious and is due to be granted on all claims.

It is hereby **ORDERED** that Defendant's Motion to Dismiss [Dkt. 11] is **GRANTED**.  The Clerk is **DIRECTED** to close the case.

**SO ORDERED** this 16th day of April, 2024.

_____

**RICHARD W. STORY**
United States District Judge

56