## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## GAINSVILLE DIVISION

| | | |
|---|---|---|
| THOMAS CHASTAIN, | ) | |
| and JONATHAN V. DUNN, Individually | ) | |
| And on Behalf of All Others Similarly | ) | |
| Situated, | ) | CLASS ACTION |
| | ) | CIVIL ACTION FILE |
| Plaintiffs, | ) | NO. 2:23-CV-160-RWS |
| | ) | |
| v. | ) | |
| | ) | |
| BLUE LINE SOLUTIONS, LLC | ) | |
| | ) | |
| Defendant. | ) | |

## SECOND AMENDED CLASS ACTION COMPLAINT

COME NOW Plaintiffs Thomas Chastain and Jonathan V. Dunn, individually and on behalf of all other persons similarly situated, by and through their attorneys, allege as follows:

## NATURE OF THE ACTION

1.

This is a class action brought to declare O.C.G.A. § 40-14-18 (the "School Zone Electronic Enforcement Statute") unconstitutional and for refund of unauthorized and excessive fees levied and collected by Defendant Blue Line Solutions, LLC (Blue Line) under the color of that statute and uniform contracts

between Blue Line and local governments, including the City of Tallulah Falls and Chatham County.  The statute imposes fines and penalties upon owners of motor vehicles simply because a motor vehicle is registered in their name in violation of the due process clauses of the United States and Georgia Constitutions and O.C.G.A. § 16-2-20.   The procedures for imposition of these unconstitutional fines and penalties set forth in O.C.G.A. § 40-14-18 are patently illegal and unconstitutional. Moreover, the statute unconstitutionally deprives owners of motor vehicles registered with the Georgia Department of Public Safety with equal protection of the law.  Blue Line is a private, for-profit, out-of-state corporation. It is not a *governing body,* nor is it an agent of a *governing body* empowered to provide law enforcement or judicial functions nor is it an agent of a *law enforcement agency*.  Its employees are not sworn law enforcement officers certified to test and operate radar speed detection equipment, to issue citations accusing Georgians of violations of Georgia law, or to act as *de facto* law enforcement officers or as court administrators.  Blue Line is collecting *unauthorized revenue*, wrongfully retaining revenue, imposing excessive and unauthorized electronic processing fees and unauthorized credit card usage fees against Named Plaintiffs and the prospective Class Members in violation of Georgia law.

2.

The School Zone Enforcement Statute is unconstitutional as written and as applied under Blue Line's form contracts.

3.

Georgia law does not allow private, for-profit corporations to share on a percentage-basis fines and penalties imposed upon its citizens for violations of criminal statutes, nor does it authorize a private, for-profit corporation to masquerade as a law enforcement agency and thereby deceptively hide the fact that a large portion of the solicited penalties are being retained by the undisclosed private, for-profit corporation.

## PARTIES, JURISDICTION AND VENUE

4.

Plaintiff Thomas Chastain is a resident of Rabun County, Georgia. Plaintiff Thomas Chastain was issued a "Notice of Citation" under the "School Zone Electronic Enforcement Statute" purportedly by the Tallulah Falls Police Department on March 7, 2023, even though he was not driving his 2021 Jeep that is the subject of the citation on the date and time shown on the citation and had not violated any state or local speed limit law. *See* Ex. A.

5.

Plaintiff Jonathan Dunn is a resident of Chatham County, Georgia and was issued a "Notice of Citation" under the "School Zone Electronic Enforcement Statute" purportedly by the Chatham County Police Department on November 8, 2022, charging that his "motor vehicle was operated in disregard or disobedience of the speed limit the marked school zone..." Ex. E.

6.

Defendant Blue Line Solutions, LLC (Blue Line) is a Tennessee Limited Liability Corporation that operates the Automated Speed Enforcement Systems that are in place within school zones in numerous Georgia counties, including Habersham County and Chatham County. Blue Line Solutions is registered to do business in Georgia. Blue Line has been served by delivering a copy of the Summons and Complaint to its registered agent: Jeff Oxner, 327 Bonds Road, Chickamauga, Walker County, Georgia 30707. As such, it has elected to be subject to the general jurisdiction of the courts of Georgia, including this Court.

7.

This Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount in controversy exceeds $5,000,000 exclusive of interest and costs, there are more than 100 members

of the proposed Class, and at least one Class Member, including Plaintiffs, is a citizen of a different state from Blue Line. There is minimal diversity. This Court also has jurisdiction under 28 U.S.C. § 1331.

8.

Venue is proper in this District under 28 U.S.C. § 1391(b) because Blue Line operates in Habersham County under its contract with the City of Tallulah Falls, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this County, including wrongfully extracting $75.00 from Mr. Chastain without lawful authority and through fraudulent and deceptive conduct as set forth herein.

## FACTUAL BACKGROUND

### Overview

9.

On or about March 25, 2023, Plaintiff Thomas Chastain received a "Notice of Citation" that purports to be from the Tallulah Falls Police Department. The citation states that a *vehicle* registered to Thomas Chastain was issued a "citation" for violation of O.C.G.A. § 40-14-18 for excessive speed in a school zone on March 7, 2023, at 2:44 p.m. The "citation" does not accuse Mr. Chastain of driving over the speed limit. The "citation" does state that a camera took photographs of the rear of Thomas Chastain's automobile while the car was traveling 58 miles per hour in a

school zone with a speed limit of 45 miles per hour. A copy of the "Notice of Citation" is attached hereto as Exhibit "A".

10.

The "Notice of Citation" created by Blue Line and mailed to Mr. Chastain states that a 2021 Jeep registered to Thomas Chastain was photographed violating the "School Zone Electronic Enforcement Statute" and as the registered owner of the vehicle Thomas Chastain was responsible for  a Civil Monetary Penalty.  The "Civil Monetary Penalty" set forth on the "citation" was $100.  Blue Line prepared and mailed this "citation" knowing that it had no evidence that identified the person who was allegedly driving Mr. Chastain's car at the time of the alleged violation of Georgia law.  The "Notice of Citation" was not a valid citation.  O.C.G.A. §17-4-23.  Employees of Blue Line prepared and mailed the "Notice of Citation" knowing that they were not Georgia law enforcement officers empowered to issue citations.

11.

Blue Line did not send to Mr. Chastain "a copy of a certificate  sworn to or affirmed by a certified peace officer" that complies with Georgia law and the mandate of O.C.G.A. § 40-14-18(b)(2)(D). No certified police officer had been sworn and administered an oath by a person authorized to administer oaths verifying on personal knowledge the violation of Georgia law asserted in the "citation" sent

6

by Blue Line to Mr. Chastain, a requirement of O.C.G.A. § 40-14-18(b)(2)(D) and other provisions of Georgia law. The brief statement to the contrary in the "citation" that Blue Line mailed to Mr. Chastain was materially false and deceptive, and was used to extract money from Mr. Chastain in violation of 18 U.S.C. § 1341 and O.C.G.A. § 16-8-3.  Other solicitations sent by Blue Line were similarly deficient and deceptive.

12.

Plaintiff Thomas Chastain paid $75, the statutory penalty set forth in O.C.G.A. § 40-14-18 of the "$100 Civil Monetary Penalty" solicited by Blue Line by check payable to "Town of Tallulah Falls" on or about April 28, 2023.  A true and correct copy of the check indicating payment is attached hereto as Exhibit "B". The check, though payable to "Town of Tallulah Falls," was deposited by Blue Line in an account maintained by Blue Line in Chattanooga, Tennessee.   The payment was not voluntary.  All the facts were not known by Mr. Chastain. Mr. Chastain had the misplaced confidence that the citation was from the Tallulah Falls Police Department. Blue Line used deception to collect unauthorized revenue.   The payment was compelled under threat of a lien on the title to Mr. Chastain's automobile and deprivation of his use of his automobile and his rights as owner of his automobile, all without due process of law.

13.

Plaintiff Thomas Chastain received a second "citation" attempting to collect the maximum processing fee of $25.00 deceptively labeled by Blue Line as a "Civil Monetary Penalty" on or around May 25, 2023. A true and correct copy of the second citation is attached as Exhibit "C".

14.

On May 26, 2023, Blue Line mailed a third and Final Notice for alleged Nonpayment of a "Civil Monetary Penalty" in the amount of $25 to Mr. Chastain, even though the statute only authorizes a civil monetary penalty of $75.00 for a first offense. O.C.G.A. § 40-14-18(b)(1).  The Final Notice demanded payment within 30 days, by June 24, 2023, or the County or its agent "shall send a referral to the Department of Revenue."  A copy of the envelope and the Final Notice of Unpaid Civil Monetary Penalty are attached as Exhibit "D".

15.

On or about November 8, 2022, Plaintiff Jonathan Dunn received a "Notice of Citation" that purported to be from the Chatham County Police Department though it was in fact sent by Blue Line.  The "citation" states that a *vehicle* registered to Plaintiff Jonathan Dunn was issued a citation in violation of O.C.G.A. § 40-14-18

for excessive speed in a school zone on October 28, 2022. The "citation" does not accuse Mr. Dunn of driving over the speed limit.  The "citation" does state that a camera took photographs of the rear of Plaintiff Dunn's automobile traveling 48 miles per hour in a school zone with a speed limit of 35 miles per hour at 4:12 p.m. on October 28, 2022.   A copy of the "Notice of Citation" is attached hereto as Exhibit "E".  This "Notice of Citation," issued by Blue Line, is not a valid citation. O.C.G.A. § 17-4-23.  Employees of Blue Line prepared and mailed the "Notice of Citation" knowing that they were not Georgia law enforcement officers empowered to issue citations.

16.

The "Notice of Citation" sent to Mr. Dunn states that a 2014 Toyota registered to Mr. Dunn was photographed violating the "School Zone Electronic Enforcement Statute" and as the registered owner of the vehicle Mr. Dunn was responsible for a "Civil Monetary Penalty."  "The Civil Monetary Penalty" set forth on the "Citation" was $100, even though the statute only authorizes a civil monetary penalty of $75.00 for a first offense. O.C.G.A. § 40-14-18(b)(1).  Blue Line included its maximum "electronic processing fee" as part of the "Civil Monetary Penalty."   Blue Line prepared and mailed this "citation" knowing that it had no evidence that identified the person who was allegedly driving Mr. Dunn's car at the time of the alleged

9

violation of Georgia law.

17.

Mr. Dunn paid $100.00 for the "Civil Monetary Penalty" by credit card on or about January 29, 2023. The penalty included a flat $25 "processing fee" and an additional $3.90 charge for the use of a credit card for payment.  Plaintiff's total payment was $103.90. A true and correct copy of the receipt indicating payment is attached hereto as Exhibit "F".  The payment was not voluntary.  All of the facts were not known to Mr. Dunn.  Mr. Dunn had misplaced confidence that the citation was from the Chatham County Police Department.  Blue Line used deception to collect the unauthorized revenue.  It was compelled under threat of a lien on the title to Mr. Dunn's automobile and deprivation of the use of his automobile and his rights as owner of his automobile, all without due process of law.

18.

Blue Line did not send to Mr. Dunn "a copy of a certificate  sworn to or affirmed by a certified peace officer" that complies with Georgia law and the mandate of O.C.G.A. § 40-14-18(b)(2)(D).  No certified police officer had been sworn and administered an oath by a person authorized to administer oaths verifying on personal knowledge the violation of Georgia law asserted in the citation sent by Blue Line to Mr. Dunn, a requirement of O.C.G.A. § 40-14-18(b)(2)(D) and other

requirements of Georgia law.  The statement to the contrary in the citation that Blue

Line mailed to Mr. Dunn was materially false and deceptive, and was used to extract

money from Mr. Dunn in violation of 18 U.S.C. § 1341 and O.C.G.A. § 16-8-3.

Other solicitations sent by Blue Line were similarly deficient and deceptive.

**The School Zone Electronic Enforcement Statute and Related Statutes**

19.

The School Zone Electronic Enforcement Statute became effective on July 1,

2018.  A true and correct copy of the School Zone Electronic Enforcement Statute

is attached as Exhibit "G".

20.

The School Zone Electronic Enforcement Statute provides:

[T]he speed limit within any school zone as provided for in Code
Section 40-14-8 and marked pursuant to Code Section 40-14-6 may be
enforced by using photographically recorded images for violations
which occurred only on a school day during the time in which
instructional classes are taking place and one hour before such classes
are scheduled to begin and for one hour after such classes have
concluded when such violations are in excess of ten miles per hour over
the speed limit.

O.C.G.A. § 40-14-18(a)(1).

21.

The School Zone Electronic Enforcement Statute further provides:

The owner of a motor vehicle shall be liable for a civil monetary penalty

11

to the governing body of the law enforcement agency provided for in paragraph (2) of this subsection if such vehicle is found, as evidenced by photographically recorded images, to have been operated in disregard or disobedience of the speed limit within any school zone and such disregard of disobedience was not otherwise authorized by law. The amount of such civil monetary penalty shall be $75 for a first violation and $125 for a second or any subsequent violation, in addition to fees associated with the electronic processing of such civil monetary penalty which shall not exceed $25.00…

*Id*. at (b)(1).

22.

The statutes being enforced are O.C.G.A. § 40-6-181, § 40-6-1(a) and § 40-6-187(a) that provide:

### § 40-6-181. Maximum limits

(a) The limits specified in this Code section or established as authorized in this article shall be the maximum lawful vehicle speeds, except when a special hazard exists that requires a lower speed for compliance with Code Section 40-6-180.

(b) Consistent with the provision of engineering and traffic investigations regarding maximum speed limits as provided in Code Section 40-6-182, no person shall drive a vehicle at a speed in excess of the following maximum limits:

(1) Thirty miles per hour in any urban or residential district unless otherwise designated by appropriate signs;

(1.1) Thirty-five miles per hour on an unpaved county road unless designated otherwise by appropriate signs;

(2) Seventy miles per hour on a highway on the federal interstate system and on physically divided highways with full control of

access which are outside of an urbanized area of 50,000 population or more, provided that such speed limit is designated by appropriate signs;

(3) Seventy miles per hour on a highway on the federal interstate system which is inside of an urbanized area of 50,000 population or more, provided that such speed limit is designated by appropriate signs;

(4) Sixty-five miles per hour on those sections of physically divided highways without full access control on the state highway system, provided that such speed limit is designated by appropriate signs; and

(5) Fifty-five miles per hour in other locations.

(c)  The maximum speed limits set forth in this Code section may be altered as authorized in **Code Sections 40-6-182, 40-6-183, and 40-6-188.**

O.C.G.A. § 40-6-18

### § 40-6-1. Required obedience to traffic laws; maximum fines for violating speed limits

(a) It is unlawful and, unless otherwise declared in this chapter with respect to particular offenses, it is a misdemeanor for any person to do any act forbidden or fail to perform any act required in this chapter.

(b) Unless a different maximum fine or greater minimum fine is specifically provided in this chapter for a particular violation, the maximum fine which may be imposed as punishment for a first offense of violating any lawful speed limit established by or pursuant to the provisions of Article 9 of this chapter by exceeding a maximum lawful speed limit:

(1) By five miles per hour or less shall be no dollars;

13

(2) By more than five but not more than ten miles per hour shall not exceed $25.00;

(3) By more than ten but not more than 14 miles per hour shall not exceed $100.00;

(4) By more than 14 but less than 19 miles per hour shall not exceed $125.00;

(5) By 19 or more but less than 24 miles per hour shall not exceed $150.00; or

(6) By 24 or more but less than 34 miles per hour shall not exceed $500.00.

O.C.G.A. § 40-6-1.

The statutory penalties do not include loss of use of one's automobile

or deprivation of ownership rights by barring tag renewals and title transfers.

23.

Paragraph (b)(2) of the School Zone Electronic Enforcement Statute provides:

A law enforcement agency authorized to enforce the speed limit of a school zone, or an agent working on behalf of a law enforcement agency or governing body, shall send by first class mail addressed to the owner of the motor vehicle within 30 days after obtaining the name and address of the owner of the motor vehicle but no later than 60 days after the date of the alleged violation:

(A)   A citation for the alleged violation, which shall include the date and time of the violation, the location of the infraction, the maximum speed at which such motor vehicle was traveling in photographically recorded images, the maximum speed applicable within such school zone, the civil warning or the amount of the civil monetary penalty imposed, and the date by which a civil monetary penalty shall be paid;

(B)   An image taken from the photographically recorded images showing the vehicle involved in the infraction;

(C)   A website address where photographically recorded images showing the vehicle involved in the infraction and a

duplicate of the information provided for in this paragraph may be viewed;

(D)    A copy of a certificate sworn to or affirmed by a certified peace officer employed by a law enforcement agency authorized to enforce the speed limit of the school zone and stating that, based upon inspection of photographically record images, the owner's motor vehicle was operated in disregard or disobedience of the speed limit in the marked school zone and that such disregard or disobedience was not otherwise authorized by law;

(E)    A statement of the inference provided by paragraph (4) of this subsection and of the means specified therein by which such inference may be rebutted;

(F)    Information advising the owner of the motor vehicle of the manner in which liability as alleged in the citation may be contested through an administrative hearing; and,

(G)    A warning that failure to pay the civil monetary penalty or to contest liability in a timely manner as provided for in subsection (d) of this Code section shall waive any right to contest liability.

*Id.* at b(2)(A)-(G).

24.

The above code section did not amend by implication any other statute, including O.C.G.A. §§ 16-2-20, 17-4-23, 40-6-1, 40-14-2.

25.

Paragraph (m) of said statute provides:

**§ 40-14-18. Enforcement; photographically recorded images; civil penalty**

(m) The money collected and remitted to the governing body pursuant to paragraph (1) of subsection (b) of this Code section shall only be used by such governing body to fund local law enforcement or public

safety initiatives. This subsection shall not preclude the appropriation of a greater amount than collected and remitted under this subsection.

O.C.G.A. § 40-14-18(m).

26.

The statutes imposing punishments for speeding address only the *driver* of the speeding vehicle and not the *owner*.

27.

The requirements for a valid citation for speeding are:

**§ 17-4-23. Arrests for certain violations may be made by citation; warrants for failure to appear**

(a)(1) A law enforcement officer may arrest a person accused of violating any law or ordinance enacted by local law governing the operation, licensing, registration, maintenance, or inspection of motor vehicles or violating paragraph (2), (3), or (5) of subsection (a) of Code Section 3-3-23 by the issuance of a citation, provided that such offense is committed in his or her presence or information constituting a basis for such arrest was received by the arresting officer from a law enforcement officer observing such offense being committed, except that, when such offense results in an accident, an investigating officer may issue citations regardless of whether the offense occurred in the presence of a law enforcement officer.

.   .   .

(3) The arresting officer shall issue a citation to the accused which shall enumerate the specific charges and the date upon which he or she is to appear and answer the charges or a notation that he or she will be later notified of the date upon which he or she is to appear and answer the charges. When an arresting officer makes an arrest concerning the operation of a motor vehicle based on information received from another law enforcement officer who observed the offense being

> committed, the citation shall list the name of each officer and each
> officer must be present when the charges against the accused are heard.

O.C.G.A. § 17-4-23(a).   However, the provisions of the School Zone Electronic Enforcement Act do not apply if the citation was issued by a certified peace office. O.C.G.A. § 40-14-18(l).

### 28.

The documents entitled "citations" that were prepared by Blue Line and mailed by Blue Line to Mr. Chastain and Mr. Dunn and to all members of the proposed class are not *bona fide* citations that accuse drivers of violations of Georgia law.  The "citations" were not issued by law enforcement officers based upon personal knowledge as required by O.C.G.A. § 17-4-23(a). The Blue Line "citations" are fake documents used to deceive the owners of motor vehicles with Georgia license plates.

### 29.

A crime is a public wrong against the State.  An action to enforce an alleged violation of a criminal statute is a criminal case, conferring upon the accused the full panoply of due process rights afforded all persons charged with the commission of a crime.

### 30.

O.C.G.A. § 40-6-1(a), § 40-6-181(a) and all speeding statutes enacted by local

17

governments are criminal statutes, and monetary obligations imposed upon alleged violators are punishments for violations for crimes. These statutes and the School Zone Electronic Enforcement Statute must be construed narrowly and against the State.

31.

Mislabeling a fine as a "civil monetary penalty" does not alter the fact that the charge being imposed is, as a matter of law, a punishment being imposed for violation of a criminal statute. A charge of violation of a criminal statute is not a civil action.

32.

All sums collected by Blue Line from Mr. Chastain, Mr. Dunn and all members of the proposed class are penalties collected for punishment of alleged violations of criminal statutes. Funds cannot be collected or penalties imposed that are not authorized by statute.

33.

There is no underlying criminal statute in Georgia that makes the owner of a motor vehicle liable for the commission of a crime because a vehicle registered to the owner allegedly was traveling too fast in a school zone. Georgia law provides:

(b) A person is concerned in the commission of a crime only if he:

(1) Directly commits the crime;

(2) Intentionally causes some other person to commit the crime under such circumstances that the other person is not guilty of any crime either in fact or because of legal incapacity;

(3) Intentionally aids or abets in the commission of the crime; or

(4) Intentionally advises, encourages, hires, counsels, or procures another to commit the crime.

O.C.G.A. § 16-2-20(b).

34.

The "Notices of Citations" prepared and mailed by Blue Line do not charge Mr. Chastain or Mr. Dunn or any class member with any culpable conduct.

35.

Blue Line has prepared and entered into substantially similar contracts called "Automated Speed Enforcement System Agreements (ASE System)" with numerous Georgia counties and local governments to perform automated enforcement of the "School Zone Electronic Enforcement Statute". Blue Line owns, possesses, implements and operates the ASE System including the equipment, radar and cameras. Blue Line provides an automated, web-based processing program for all Notices of Liability also known as "Notices of Citation" on the documents mailed to purported violators.

36.

O.C.G.A. § 40-14-18(b)(2)(D) requires service of a copy of an actual, written affidavit executed by a law enforcement officer in the presence of a notary public following administration of an oath and with the notary's jurat and seal affixed thereto. The brief words and printed signatures contained in the "Notices of Citations" sent by Blue Line to Mr. Chastain, Mr. Dunn and members of the proposed class do not meet the command of § 40-14-18(b)(2)(D) or Georgia law.

37.

The statute further provides:

> (3) Proof that a motor vehicle was operated in disregard or disobedience of the speed limit of the marked school zone shall be evidenced by photographically recorded images. A copy of a certificate sworn to or affirmed by a certified peace officer employed by a law enforcement agency and stating that, based upon inspection of photographically recorded images, a motor vehicle was operated in disregard or disobedience of the speed limit in the marked school zone and that such disregard or disobedience was not otherwise authorized by law shall be prima-facie evidence of the facts contained therein;

O.C.G.A. § 40-14-18(b)(3).

38.

The above section confirms that the statute contemplates a written affidavit executed and reflecting the formalities required of affidavits probative in legal proceedings, which the form language and printed signature without jurat or seal

20

appearing on Blue Line's form "Notices of Citations," clearly is not.

39.

The form language and printed signatures does not establish a *prima-facie* case that the registered owner of a car had violated any Georgia law.  The accused, including Mr. Chastain, Mr. Dunn and all proposed class members have a constitutional right to the presumption of innocence with the burden of proof beyond a reasonable doubt resting with the State of Georgia.  The contrary provisions of O.C.G.A. § 40-14-18(b)(3) are unconstitutional under the due process clauses of the United States and Georgia Constitutions.

40.

O.C.G.A. § 40-14-18(b)(4) provides:

(b) For the purpose of enforcement pursuant to this Code section:

(1) The owner of a motor vehicle shall be liable for a civil monetary penalty to the governing body of the law enforcement agency provided for in paragraph (2) of this subsection if such vehicle is found, as evidenced by photographically recorded images, to have been operated in disregard or disobedience of the speed limit within any school zone and such disregard or disobedience was not otherwise authorized by law. The amount of such civil monetary penalty shall be $75.00 for a first violation and $125.00 for a second or any subsequent violation, in addition to fees associated with the electronic processing of such civil monetary penalty which shall not exceed $25.00; provided, however, that for a period of 30 days after the first automated traffic enforcement safety device is introduced by a law enforcement agency within a school zone, the driver of a motor

vehicle shall not be liable for a civil monetary penalty but shall be issued a civil warning for disregard or disobedience of the speed limit within the school zone;

(2) A law enforcement agency authorized to enforce the speed limit of a school zone, or an agent working on behalf of a law enforcement agency or governing body, shall send by first class mail addressed to the owner of the motor vehicle within 30 days after obtaining the name and address of the owner of the motor vehicle but no later than 60 days after the date of the alleged violation:

(A) A citation for the alleged violation, which shall include the date and time of the violation, the location of the infraction, the maximum speed at which such motor vehicle was traveling in photographically recorded images, the maximum speed applicable within such school zone, the civil warning or the amount of the civil monetary penalty imposed, and the date by which a civil monetary penalty shall be paid;

(B) An image taken from the photographically recorded images showing the vehicle involved in the infraction;

(C) A website address where photographically recorded images showing the vehicle involved in the infraction and a duplicate of the information provided for in this paragraph may be viewed;

(D) A copy of a certificate sworn to or affirmed by a certified peace officer employed by a law enforcement agency authorized to enforce the speed limit of the school zone and stating that, based upon inspection of photographically recorded images, the owner's motor vehicle was operated in disregard or disobedience of the speed limit in the marked school zone and that such disregard or disobedience was not otherwise authorized by law;

22

>(E) A statement of the inference provided by paragraph (4)
>of this subsection and of the means specified therein by
>which such inference may be rebutted;

O.C.G.A. § 40-14-18(b).

41.

Those so accused, including Mr. Chastain, Mr. Dunn and all proposed class members have a constitutional right to the presumption of innocence with the burden of proof beyond a reasonable doubt resting with the State of Georgia.  The contrary provisions of O.C.G.A. § 40-14-18(b)(3) are unconstitutional under the due process clauses of the United States and Georgia Constitutions.

42.

The statute limits available defenses.  O.C.G.A. § 40-18-18(b)(4).  These defenses do not include the issue of whether Blue Line's automated radar system was producing accurate results, a further deprivation of due process guaranteed by the Constitutions of the United States and Georgia.

43.

The School Zone Electronic Enforcement Statute imposes fines and severe penalties only upon registered owners of motor vehicles registered in the State of Georgia.  Owners of vehicles registered in a state other than Georgia, violators of Georgia speeding laws who drive a car registered to someone else and drivers of

leased vehicles are exempt from its sanctions.

44.

Fines for traffic violations collected through our courts are subject to a cap. O.C.G.A. § 40-14-11(d).  This provision of Georgia law discourages small Georgia towns from becoming speed traps.  However, as recently amended, this cap does not apply to  fines collected  by Blue Line and other private, for-profit  companies operating under the School Zone Electronic Enforcement Statute:

> (d) There shall be a rebuttable presumption that a law enforcement agency is employing speed detection devices for purposes other than the promotion of the public health, welfare, and safety if the fines levied based on the use of speed detection devices for speeding offenses are equal to or greater than 35 percent of a municipal or county law enforcement agency's budget. For purposes of this Code section, fines collected for citations issued for violations of Code Section 40-6-180 shall be included when calculating total speeding fine revenue for the agency; provided, however, that fines for speeding violations exceeding 20 miles per hour over the established speed limit and civil monetary penalties for speeding violations issued pursuant to Code Section 40-14-18 shall not be considered when calculating total speeding fine revenue for the agency.

O.C.G.A. § 40-14-11(d).

This exception for § 40-14-18 promotes small town speed traps and denies equal protection for registered owners of motor vehicles registered in Georgia  entrapped by Blue  Line and those with whom it  has contracts.

45.

Tallulah Falls has a population of 283.  The city budgeted $125,425 for its police department for 2023.  The Blue Line cameras are set up in a wooded, rural area on U.S. 441, a divided four-lane highway.  These cameras are allegedly to protect the students of Tallulah Falls School.  However, there are no curb cuts allowing vehicles to enter or exit any school grounds from U.S. 441, nor are there any pedestrian paths along U.S. 441.  Tallulah Falls School is on School Road about half a mile from U.S. 441.  It is not visible from U.S. 441.  The town has become infamous as a speed trap since the town teemed up with Blue Line.  The town has, to date, received $3,000,000 as its share of monies collected by Blue Line from owners of vehicles registered in Georgia that have passed along U.S. 441, without coming within a half mile of the school.  The town and Blue Line are "employing speed detection devices for purposes other than the promotion of the public health, welfare and safety," rendering their use by Blue Line illegal.  O.C.G.A. § 4-14-11(a).

46.

Drivers cited for speeding in a school zone by sworn law enforcement officers using radar systems that the officers are trained and certified to operate are exempt from the penalties of loss of use of one's vehicle.

47.

There is no rational for this disparate treatment between the registered owners of vehicles registered in Georgia and drivers and owners of all other vehicles.

48.

The registered owners of vehicles registered with the State of Georgia are denied equal protection of the law in violation of their rights under the Fourteenth Amendment of the United States Constitution and Article I, Section I, ¶ II of the Georgia Constitution.

49.

Blue Line's contract with the City of Tallulah Falls provides in pertinent part:

6.    **FEES AND PAYMENT**

City shall pay BLS for all equipment, services and maintenance based on the Service Fee schedule indicated in Exhibit C.

.   .   .

9.    **OWNERSHIP OF SYSTEM**

It is understood by the City that the ASE System, and all associated hardware and software being provided by BLS is, and shall remain, the sole property of BLS, unless separately procured by City. The ASE System is being provided to City only pursuant to the terms of this Agreement. City agrees that it shall not make any modifications to BLS's equipment, nor disassemble or perform any type or reverse engineering to the ASE System, nor infringe on any property or patent rights, nor cause *or* allow any other Person to do any of the foregoing. The parties agree that upon termination of this Agreement for any reason, BLS shall have the right, but not the

obligation, to remove all equipment provided.  If the Agreement is terminated by either Party after the completion of the first term, the City may take possession of the radar speed displays.

.   .   .

19.  **NO AGENCY**

The relationship between the parties shall be that of independent contractors, and the employees, agents and servants of either party shall in no event be considered to be employees, agents, or servants of the other party. **This Agreement shall not create an agency relationship between BLS and City** and neither party may incur any debts or liabilities or obligations on behalf of the other party, except as specifically provided herein.

Exhibit "H," pp. 3, 4, 6 (emphasis added).

50.

Exhibit C to the contract provides:

Revenue of paid Notice of Liability shall be shared between the two parties:

> The City's portion shall be **65%** of all paid Notice of Liabilities and BLS's portion shall be **35%** of all paid Notice of Liabilities. No fees or charges will be assessed to the agency for non-paid violations.

> BLS provides all ASE equipment, installation, wireless integration, & infrastructure. **ASE System equipment and installation costs are recovered by BLS in 12 equal monthly installments from net revenue generated and apportioned to BLS from revenue share. In the event the agreement is terminated by the City as allowed by Section 4.A.(I), prior to full recovery of equipment and installation costs, the City will be responsible for the balance.** The parties agree the cost of development,

27

implementation, and installation of the ASE System is $75,000 per installed ASE Camera System, and upon early termination under Section 4.A.(I) the City shall reimburse BLS *for* such cost of the ASE System used by City. Full payment of all such costs will be due within 30 days after the date of termination.

**Fees Charged to Violators**

A credit card convenience fee of $4.90 to be charged to the violator using a credit card (unless prohibited by state statute) for violation payment paid via the Internet. Such convenience fees shall be collected by BLS during payment of violation and shall not be shared with City or included in City's share of Revenue.

*Id.,* p. 12 (emphasis added).

51.

Blue Line's contract with Chatham County provides in pertinent part:

6.   **FEES AND PAYMENT**

County shall pay BLS for all equipment, services and maintenance based on the Service Fee schedule indicated in Exhibit C.

.   .   .

9.   **OWNERSHIP OF SYSTEM**

It is understood by the County that the ASE System, and all associated hardware and software being provided by BLS is, and shall remain, the sole property of BLS, unless separately procured by County. The ASE System is being provided to County only pursuant to the terms of this Agreement. County agrees that it shall not make any modifications to BLS's equipment, nor disassemble or perform any type or reverse engineering to the ASE System, nor infringe on any property or patent rights, nor cause *or* allow any other Person to do any of the foregoing.

.   .   .

28

19.  **NO AGENCY**

The relationship between the parties shall be that of independent contractors, and the employees, agents and servants of either party shall in no event be considered to be employees, agents, or servants of the other party. **This Agreement shall not create an agency relationship between BLS and County** and neither party may incur any debts or liabilities or obligations on behalf of the other party, except as specifically provided herein.

Exhibit "I," pp. 3, 4, 6 (emphasis added).

52.

Exhibit C to the contract provides:

Revenue of paid Notice of Liability shall be shared between the two parties:

> The County's portion shall be **65%** of all paid Notice of Liabilities and BLS's portion shall be **35%** of all paid Notice of Liabilities. No fees or charges will be assessed to the agency for non-paid violations.

> BLS provides all ASE equipment, installation, wireless integration, & infrastructure. **ASE System equipment and installation costs are recovered by BLS in 2 4 equal monthly installments from net revenue generated and apportioned to BLS from revenue share beginning from the first revenue disbursement to the County from each ASE system. In the event the agreement is terminated by the County as allowed by Section 4.A., prior to full recovery of equipment and installation costs, the County will be responsible for the balance.** Full payment will be due within 30 days after written termination.

**Fees Charged to Violators**

> A credit card processing fee of $3.90 to be charged to the violator using a credit/debit card (unless prohibited by state statute) for violation payment paid via the Internet. The fee will be $4.90 for credit/debit payments processed manually for phone payments. Such processing fees shall be collected by BLS during payment of violation.

*Id.,* p. 12 (emphasis added).

53.

Pursuant to its ASE System agreements, Blue Line is not an agent of the City of Tallulah Falls nor of the Town of Tallulah Falls Police Department. Blue Line is not an agent of Chatham County nor of the Chatham County Police Department.

## **Blue Line's Operation**

54.

Blue Line provides the local governments with the full panoply of duties that are, as a matter of law, the duties of sworn law enforcement officers and court officials.

55.

Blue Line exercises its own discretion as to where to place cameras, the duties to test the radar systems for accuracy, the operation of the cameras that photograph tags of automobiles, the decision as to which vehicle owners to charge with violations, the preparation of the purported "citations," the collection of monies as

penalties for alleged, but non-existent, violations of Georgia law, and the remittance of a portion of the collected funds to the respective local governments.  Blue Line is the *de facto* clerk of the Tallalah Falls Municipal Court. Exhibit J.

56.

The establishment of penalties that may be imposed as a consequence of violations of criminal statutes is a legislative function that cannot, by contract, be delegated to a private, for-profit corporation such as Blue Line.

57.

The discretion as to what amount of a legislatively-authorized monetary penalty to impose upon persons convicted of violations of a criminal statute is a judicial function that cannot, by contract, be delegated to a private, for-profit corporation such a Blue Line.

58.

The contracts between Blue Line and Georgia local governments, including the City of Tallulah Falls and Chatham County, do not set the amount of "electronic processing fees" that Blue Line can charge owners of vehicles registered in Georgia. All sums denominated as "electronic processing fees" collected by Blue Line are collected without lawful authority.

59.

Neither Blue Line nor any of its employees are sworn law enforcement officers, nor are they certified to test or to operate radar speed detection devices in the manner compelled by Georgia law.

60.

Blue Line provides all of the above governmental duties deceptively in the name of the local government that it is not.

61.

Blue Line has wrongfully and deceptively, and without authority, collected funds from the named Plaintiffs and members of the Class that it has retained and applied to its charges for the cost of Blue Line's equipment that are not authorized by O.C.G.A. § 40-14-18, in violation of 18 U.S.C. § 1341 and O.C.G.A. §16-8-3 and Art. 3, Sec. 6, ¶ 6 of the Georgia Constitution.

62.

Blue Line's contracts are void in that they delegate law enforcement and judicial duties to employees of a private, for-profit corporation compensated on a fee system in violation of O.C.G.A. § 40-14-2, the Due Process Clause of the Fourteenth Amendment of the United States Constitution and the Due Process Clause of the Georgia Constitution, Act. 1, Sec. 1, ¶ 1.  Blue Line has wrongfully

and deceptively, and without authority, collected and retained funds from the named Plaintiffs and members of the Class.

63.

Substantially similar Blue Line contracts provide that Blue Line shall collect and accumulate all payments received under the guise of payments to law enforcement agencies on a monthly basis and provide payment of a portion of the collected funds to the law enforcement agencies on or before the 15th day of the following month. The "citations" issued and mailed, and the collection of the penalties and fees are standardized and automated. The name of the law enforcement agency in the county or municipality under contract is inserted into the "citation" by Blue Line.  Although the name of the law enforcement or governmental agency is set forth on the citation, the mailing address for all payments by check are to Blue Line's offices in Chattanooga, Tennessee though such fact is not disclosed by Blue Line.  This non-disclosure is deceptive and utilized to extract money from Plaintiffs and Class Members that they do not owe to Blue Line in violation of 18 U.S.C. § 1341 and O.C.G.A §§ 16-8-3 and 16-10-23.

64.

As part of the Automated Speed Enforcement System Agreement, Blue Line assumes responsibility for preparing and mailing the "Notice of Citation" to the

registered owner of a vehicle that has been deemed in violation of speeding statutes, even though Blue Line is not a law enforcement agency or an agent of a law enforcement agency or an agent of a governing body as required by O.C.GA. § 40-14-18(b)(2).  Its employees are not certified, sworn law enforcement officers trained and certified to test and operate speed detection radar devices in the State of Georgia.

65.

Blue Line electronically sends to the Tallulah Falls Police Department, the Chatham County Police Department and other local governments, photos of the tags of the cars that it has selected to send its "Notice of Citation" to the car's registered owner.  Included with the electronic photos is the speed reported by Blue Line's automated cameras.  An employee of the police department is asked to click *yes* or *no* as to whether Blue Line should send the citation.  The employee of the police department has no personal knowledge of the information gathered and reported by Blue Line, no knowledge of who might have been the driver of the photographed vehicle and no knowledge of whether the speed detection equipment functioned properly or had been operated properly.  The employee of the police department does not have the personal knowledge necessary for issuance of a valid citation or to execute an affidavit with any probative value.  This digital approval is a sham.

66.

The speeds reported by Blue Line's automated devices do not meet the requirements for admissibility in civil or criminal trials in Georgia courts.

67.

Blue Line's camera systems and "Notices of Citations" are a charade, a fraudulent enterprise created and operated to induce owners of vehicles registered in Georgia to mail it checks for $100 or more.

68.

Included on the "Notice of Citation" prepared by Blue Line is a penalty amount and payment instructions.  Blue Line does not disclose its name, its involvement or the fact that the solicited payments go to Blue Line and not to the law enforcement agency or local government that is named in the citation as the payee of the solicited "Civil Monetary Penalty" of $100.00.  Blue Line thus deceptively hides its identity and illegally impersonates itself as a law enforcement officer in violation of 18 U.S.C. § 1341 and O.C.G.A. § 16-10-23.  Blue Line thereby has fraudulently and deceptively, and without authority, collected and retained money from Plaintiffs and Class Members in violation of 18 U.S.C. § 1341 and O.C.G.A. §§ 16-8-3, and 16-10-23.

35

69.

Each time Blue Line prepares and mails a "citation" to Plaintiffs and to members of the Class in the form of Exhibit A, it is a separate violation of O.C.G.A. § 16-10-23 and 18 U.S.C. § 1341, and a separate and related act of racketeering activity. O.C.G.A. § 16-14-3(5)(A)(xxiii). Each use of the U.S. Mails is a part of a pattern of racketeering activity.

70.

Pursuant to the School Zone Electronic Enforcement Statute the "civil monetary penalty [for violation of the School Zone Electronic Enforcement Statute] shall be $75.00 for a first violation and $125.00 for a second or any subsequent violation, *in addition to fees associated with the electronic processing of such civil monetary penalty which shall not exceed $25.00....*" O.C.G.A. § 40-14-18(b)(1) (emphasis added). The statute provides a maximum of $25 for the electronic processing of the *civil monetary penalty,* but it does not assign to private, for-profit corporations the discretion to set the amount to be charged.

71.

The electronic processing fee of the civil monetary penalty assessed to Plaintiffs and Class Members exceeds the statutory amount authorized by O.C.G.A. § 40-14-18(b)(1) in that it is an automatic, flat rate charge that does not reflect the

actual cost incurred by Blue Line for electronic processing of the civil monetary penalty payment. Blue Line deceptively demanded $100 as "civil monetary penalty." Blue Line levies an additional charge for the processing of credit card payments for the civil monetary penalty for which there is no statutory authorization. These facts were not disclosed to Plaintiffs or Class Members. Blue Line thereby has fraudulently and deceptively, and without authority, collected and retained money from Plaintiffs and Class Members in violation of 18 U.S.C. § 1341 and O.C.G.A. §§ 16-8-3, and 16-10-23.

72.

Plaintiff Thomas Chastain's "Notice of Citation" shows the following:



| | | |
|---|---|---|
| For frequently asked questions and/or to make a payment, please visit: **WWW.VIOLATIONPAYMENT.NET** Use your Citation Number and Plate Number to logon. | | |
| **ACCEPTED CREDIT/DEBIT CARDS** $4.90 CHARGE ADDED TO ALL CREDIT/DEBIT CARD PAYMENTS. | | |
| *(card logos)* DISCOVER   VISA | | |
| **IF PAYING BY PHONE** Please call:   **1-855-252-0086   TOLL FREE** $4.90 CHARGE ADDED TO ALL CREDIT/DEBIT CARD PAYMENTS. | | |
| If paying by check, please make check or money order payable to the **TOWN OF TALLULAH FALLS.** Do not mail cash or credit/debit card information. Enclose remittance slip and check. | | |
| **CITATION DATE** 03/25/2023 | **PAY THIS AMOUNT** $100.00 | **CITATION #** 73-10019461 |
| **PAY BY:**   05/25/2023 | AMOUNT PAID   $ | |

04 10019461 010000 01 5

37

73.

Plaintiff Jonathan Dunn's "Notice of Citation" shows the following:



74.

The School Zone Electronic Enforcement Statute does not authorize an automatic charge for all citations of the maximum amount of the electronic processing fee regardless of actual electronic processing costs. Further, the "Notice of Citation" issued to Plaintiffs misstates the nature of the $25.00 fee by calling it a "processing fee," rather than as an *electronic* processing fee and by stating that the "Civil Monetary Penalty is $100," even though the statute only allows for a $75 civil monetary penalty. Twenty-five dollars is a grossly excessive charge for the mailing of a copy of a citation to an alleged violator.

75.

Such facts, as set forth above, were not disclosed to Plaintiffs and Class Members, rendering the written statements of Blue Line fraudulent and deceptive. Blue Line has thereby fraudulently and deceptively, and without authority, collected and retained money from Plaintiffs and Class Members not authorized by O.C.G.A. § 40-14-18 and in violation of 18 U.S.C. § 1341 and O.C.G.A. §§ 16-8-3, and 16-10-23.

76.

Blue Line deceptively posed  the "Town of Tallulah Falls Police Department" and "The Chatham County Police Department" and affixed an image of a law enforcement badge to the citations without disclosing Blue Line's true identify and without disclosing that a substantial portion of the solicited funds were going to a private, for-profit corporation and not to fund local law enforcement or public safety initiatives, in violation of 18 U.S.C. § 1341 and O.C.G.A. §§ 16-8-3, 16-10-23, and 40-14-18(m) and the Due Process Clause of the Georgia Constitution.

77.

Plaintiff Thomas Chastain paid $75 of the solicited $100 by check made payable to the Town of Tallulah Falls, but cashed by Blue Line.  He has been subjected to additional collection efforts by Blue Line for $25, presumably for a

"processing fee" and threatened with referral of his motor vehicle to the Department of Revenue for nonrenewal of the registration and a prohibition of title transfer of such motor vehicle within this state for failure to pay the full amount of the deceptively labeled "Civil Monetary Penalty" that included the unreasonably excessive maximum electronic processing fee.

78.

Although Plaintiff Thomas Chastain paid the civil penalty by check made payable to the Town of Tallulah Falls, but mailed to Blue Line's office, Blue Line included a charge of $25 to electronically process the civil monetary penalty. Blue Line did not disclose that it, and not Tallulah Falls, was cashing the check and retaining at least 35% of the payment. Because Mr. Chastain paid only the civil monetary penalty set by statute, Blue Line fraudulently and deceptively extracted the $75 fine paid by Mr. Chastain and used the U.S. Mail to execute this fraudulent scheme under the guise of being a Georgia governmental entity, all in violation of 18 U.S.C. § 1341 and O.C.G.A. §§ 16-8-3, 16-10-23, and 40-14-18(m) and the Due Process Clauses of the Georgia and United States Constitutions.

79.

Blue Line, posing as the Town of Tallulah Falls Police Department, mailed the "Final Notice of Nonpayment" of the "Civil Monetary Penalty" to Mr. Chastain

40

in an attempt to collect its unauthorized $25 electronic processing fee.   The electronic processing fee is not an enforceable penalty and Blue Line has deceptively issued this notice and caused Mr. Chastain to be referred to the Department of Revenue for nonpayment of Blue Line's unauthorized processing fee in violation of 18 U.S.C. § 1341 and O.C.G.A. §§ 16-8-3, 16-10-23, and 40-14-18(m).

80.

Blue Line charged and collected $25 from Plaintiff Jonathan Dunn as an electronic processing fee and an additional $3.90 for electronic processing of his credit/debit card without statutory authority and without disclosing this lack of authority or factual support for it to collect and retain any of the charge.  Blue Line did not disclose that the 35% of the $100 "Civil Monetary Penalty" it collected from Mr. Dunn under the guise of being the "Chatham County Police Department" was money illegally being retained by Blue Line , a for-profit Tennessee corporation. Blue Line used the U.S. Mails in the execution of this fraudulent scheme in violation of 18 U.S.C. § 1341 and O.C.G.A. §§ 16-8-3, 16-10-23, and 40-14-18(m) and the Due Process Clauses of the Georgia and United States Constitutions.

81.

Blue Line wrongfully, fraudulently and deceptively extracted $103.90 from Mr. Dunn in violation of 18 U.S.C. § 1341; O.C.G.A. §§ 16-8-3, 16-10-23 and 40-

14-18.

82.

Under the ASE System agreements, Blue Line determines the locations for the ASE equipment.  Upon information and belief, Blue Line does not install the ASE systems in areas with the highest number of school days and highest number of school hour vehicle crashes.  Instead, ASE systems are installed in school zones with the highest traffic volume.  Blue Line's ASE System agreements have a built-in incentive to maximize the issuance of citations while making public safety a less significant consideration.  O.C.G.A. § 40-14-18 specifically provides that the $25 processing fee is to electronically process the civil monetary penalty.  It does not provide that the $25 processing fee is for costs to process the citation nor collect revenue. O.C.G.A. § 40-14-18(b)(1).

## CLASS ACTION ALLEGATIONS

83.

This action is brought by Named Plaintiffs as a class action, individually and on behalf of all prospective Class Members, under the provisions of  Fed.R.Civ.P. 23(a), 23(b)(1), 23(b)(2),  23(b)(3) and 23(c)(4).

84.

Plaintiffs seeks certification of  the following Class :

All Georgia citizens who have been mailed a "Notice of Citation" pursuant to the School Zone Electronic Enforcement Statute, O.C.G.A. § 40-14-18 by Blue Line Solutions from July 1, 2018, to the date of certification of a class.

85.

Excluded from the Class are Defendant; officers, directors and employees of Blue Line; any entity in which Blue Line has a controlling interest, is a parent or subsidiary, or which is controlled by Blue Line; and the affiliates, legal representatives, attorneys, heirs, predecessors, successors, and assigns of Blue Line.

86.

Plaintiffs individually and on behalf of the Class Members seek a refund of all amounts charged and collected by Blue Line, plus exemplary damages and expenses of litigation, including reasonable attorney fees.

87.

Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of the claims on a class-wide basis using much the same evidence as would be used to prove those elements in individual actions alleging the same claims.

88.

The identification of Class Members is readily available because Blue Line has access to the names and addresses for all Class Members to whom it has mailed a "Notice of Citation". The names and addresses of the Georgia vehicle owners who

have received a Notice of Citation from Blue Line can be used to provide class notice to Class Members. According to the Blue Line contracts, Blue Line provides an automated, web-based program for all citations that it has sent to Class Members, including image processing, mailing addresses and monies collected from each Class Member by Blue Line.

89.

*Numerosity*. The requirement of numerosity under Fed.R.Civ.P. 23(a)(1) is met because the state-wide Class is so numerous that joinder of all members would be impractical. Blue Line mails hundreds of citations weekly to owners of vehicles registered in Georgia.

90.

*Commonality and Predominance*. The requirements of Fed.R.Civ.P. 23(a)(2) and (b)(3) are met because this case involves common questions of law and fact that predominate over any questions that affect only individual Class Members. Common questions of law and fact include: (1) Whether the School Zone Electronic Enforcement Act is constitutional as written or as applied by Blue Line; (2) The validity of Blue Line's form contract; (3) Whether Blue Line employees meet the commands of O.C.G.A. § 40-14-2; (4) Whether Blue Line's class-wide procedures meet the commands of O.C.G.A. § 40-14-2; (5) Whether Blue Line engaged in

wrongful conduct in charging and collecting electronic fees from Class Members allegedly under O.C.G.A. § 40-18-14; (6) Whether Blue Line wrongfully charged, collected and retained credit card processing fees not authorized by the statute; (7) Whether Blue Line's conduct was unlawful and supports an action for money had and received, and unjust enrichment; (8) Whether Blue Line fraudulently has held itself out as being various law enforcement agencies while deceptively not disclosing that the solicited penalties were going to Blue Line, a private, for-profit corporation that was retaining a large portion of the collected funds; (9) The validity of the "Notices of Citation" mailed by Blue Line to Class Members; (10) Whether the owner of a vehicle registered in Georgia can be charged with illegal conduct solely because a vehicle is registered in his name; (11) Whether Plaintiffs and the Class Members suffered injury including a monetary loss; (13) Whether Plaintiffs and Class Members are entitled to recover sums wrongfully collected by Blue Line; and (14) Whether Plaintiffs and Class Members are entitled to recover punitive damages.

91.

*Typicality*. The requirement of Fed.R.Civ.P. 23(a)(3) is met because the claims of Named Plaintiffs are typical of the claims of other Class Members in that Plaintiffs were mailed "Notices of Citations" identical in form and demanding payments of a civil penalty based upon the same, programmed/automated/

computerized conduct of Blue Line, issuing collection letters and reporting delinquencies for failure to pay that result in a referral to the Department of Revenue. The Plaintiffs and all members of the Class were injured through the same misconduct of Blue Line and assert the same claims for relief. There is no conflict between Named Plaintiffs and Class Members with respect to this action, or with respect to the claims for relief herein set forth.

92.

*Adequacy*. The requirements of Fed.R.Civ.P. 23(a)(4) are satisfied because Plaintiffs and their counsel will fairly and adequately protect the interests of the Class. Plaintiffs are members of the Class they seek to represent. Plaintiffs are committed to pursuing this matter against Blue Line on a state-wide basis to obtain relief for the Class Members. Plaintiffs have no known interests that are antagonistic to or conflict with the interests of other Class Members.

93.

Counsel for Plaintiffs and the proposed Class are competent and experienced in litigating class actions and complex litigation. Prior class action cases successfully resolved by Plaintiffs' Counsel include nationwide class actions with over one hundred thousand class members and numerous class actions for environmental property damage and consumer fraud. Counsel have litigated class actions in state

46

and federal courts in Georgia, Florida, Pennsylvania, Rhode Island, Massachusetts and Maine.  Plaintiffs and their Counsel will vigorously prosecute this case and will fairly and adequately protect the Class's interests.

94.

*Superiority*. The requirements of Fed.R.Civ.P. 23(b)(3) are satisfied because this class action is superior to other available methods for fair and efficient adjudication.  Treatment as a class action will resolve common questions of law and fact and is superior to numerous individual actions or piecemeal litigation. Without a class action, Class Members may be deterred by the cost of litigating their individual claims, and therefore would have no effective remedy in the absence of class treatment.  Plaintiffs and Class Members have been harmed by Blue Line's conduct and litigating the relevant issues in a class format will reduce the possibility of repeated litigation regarding Blue Line's conduct.

95.

There are no apparent impediments at this time that would preclude class treatment. The common questions of law and fact predominate over any questions affecting individual Class Members.  Class treatment is superior to the likelihood of piecemeal litigation that would burden the courts.  Class treatment affords the Class Members an opportunity to seek relief collectively when they otherwise would be

unable to expend the cost of litigation to obtain relief for Blue Line's widespread wrongful collection of funds from Class Members.

96.

This action is also properly maintained as a class action pursuant to Fed.R.Civ.P. 23(b)(1) and 23(b)(2). The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying standards of conduct for Blue Line. As a class action, the issues can be resolved in a way that conserves judicial resources, parties' resources and protects the rights of all Class Members. Relief could be ordered including declaratory and injunctive relief among different courts that could result in different standards of conduct for Blue Line within Georgia. The prosecution of separate actions by Class Members would create the risk of adjudications among Class Members that would be dispositive of the interests and rights of others not parties to this action, or that would substantially impair or impede their ability to protect their interests.

97.

There are issues appropriate for certification under Fed.R.Civ.P. 23 (c)(4) because the claims present particular, common issues, the resolution of which would materially advance the resolution of this case and the parties' interests, including whether Blue Line engaged in wrongful conduct in charging and collecting

48

excessive standardized fees from every Class Member; whether such conduct was unlawful under Georgia law, whether such conduct constitutes theft by taking; whether such conduct is fraudulent and deceptive; and whether Plaintiffs and Class Members are entitled to recover refunds and damages.

## COUNT I

### O.C.G.A. § 40-14-18 is Unconstitutional as Written and as Applied by Blue Line

98.

Paragraphs one through ninety-seven are realleged and incorporated into Count I.

99.

A class member who wants to contest the "citation" must "testify under oath in open court or submit to the court a sworn notarized statement that he was not the operator of the vehicle at the time of the alleged violation." Thus, the statute and Blue Line's "citation" create a presumption--without evidence--that the vehicle was driven by the person to whom the vehicle is registered. The burden to prove innocence is placed on the accused and the evidence required to shift this burden of persuasion is significant, as it requires a notarized affidavit, which must be obtained at some cost, or an appearance at the hearing in person or through counsel hired for that purpose. Potential defenses are restricted by the statute. Notably, even then,

under the statute, it is entirely discretionary whether or not a sworn affidavit would be sufficient to rebut the presumption. The cost and burden of contesting the citations outweigh the cost of paying the citation. This scheme is intended to ensure payment without a meaningful opportunity to be heard. The amount of the citation is deliberately set through statute to be less than the normal speeding violation to ensure such compliance.

100.

If a class member does not pay the "citation" (or successfully contest it) the consequences are significant. If the accused does not pay or successfully contest the citation, a class member is not permitted to renew his vehicle's registration or transfer title. The lien on the vehicle leads to loss of use of one's car and loss of the right to sell one's car or to use one's title as collateral for a loan. It could lead to the repossession of the vehicle by any previous lien holder, such as a financing company.

101.

This statutory process violates Georgia statutory and common law, and the due process guarantees of the Georgia and United States Constitutions. Section 40-14-18 is unconstitutional and unenforceable as it creates a rebuttable presumption of guilt that impermissibly shifts the burden of persuasion to Plaintiffs and putative class members. Further, the system that Blue Line operates unlawfully usurps the role

of law enforcement and violates the statutory framework that dictates which governmental agencies and government employees, in what manner, may issue citations for traffic violations and impose fines:

a.    Georgia statutory law allows only law enforcement officers to utilize speed detection devices, including those for photographically recorded images, and to issue citations or penalties. O.C.G.A. § 40-14-2(a). Blue Line's conduct violates this law as it usurps this statutory mandate.  Blue Line operates the speed detection devices, makes the determinations of violations, and creates and issues the citations. Georgia law does not allow the delegation of police powers to third parties, especially as part of an outsourced policing-for-profit scheme by a Tennessee for-profit corporation.

b.    Georgia statutory law provides that owners of vehicles may only be "liable for a civil monetary penalty to the governing body of the law enforcement agency." O.C.G.A. § 40-14-18(d). Blue Line's conduct renders Plaintiffs and putative class members liable directly to Blue Line.

c.    Georgia statutory law mandates that no speed detection device may be used where payment to the issuer is on a "fee system." O.C.G.A. § 40-14-2(b). The Blue Line system is just such an incentive-based citation system, whereby the

more violations it issues the more revenue it receives.  The same is true for the local government.

d.     Georgia statutory law allows an "agent" only to mail the "citations," and Blue Line by its own contractual documents is not the agent of any municipality. O.C.G.A. § 40-14-18(b)(2). There is no authority for it to create citations or notices of violation to Plaintiffs and class members or for it to collect payment through such notices.

e.     Only law enforcement officers may issue citations for violation of Georgia traffic laws. O.C.G.A. § 17-4-23(a),(c).

102.

O.C.G.A. § 40-14-18 establishes severe penalties for registered owners of motor vehicles, imposes a presumption of guilt, places the burden of proof on the accused thereby effectively denying the accused the right against self-incrimination, limits access to a court of law and allows imposition of a monetary penalty without a prior adjudication of guilt, with the government not having the burden of proof beyond a reasonable doubt.  It is unconstitutional under the due process and privilege against self-incrimination clauses of the Fifth Amendment of the U.S. Constitution, the due process clause of the Fourteenth  Amendment of the U.S. Constitution and the due process, the right of access to the courts, the right to trial by jury and the

privilege against self-incrimination of the Bill of Rights of Article I, Section I, ¶¶ I, XI, XII and XVI of the Georgia Constitution.

103.

Only registered owners of cars registered in Georgia are subject to losing use of their cars through refusal to renew tags and blocks on title transfers. Owners of cars not registered in Georgia, drivers of leased or rental cars, drivers of cars titled to someone else and all who are issued speeding tickets by sworn law enforcement officers are not subject to loss of use of their motor vehicle due to the blocking of tag renewals and transfers of title. This is unequal protection of law without a rational basis, rendering O.C.G.A. § 40-14-18 unconstitutional under the equal protection clauses of the Constitutions of the United States and Georgia.

104.

O.C.G.A. § 40-14-18 should be declared unconstitutional as written and as applied by Blue Line.

## COUNT II – MONEY HAD AND RECEIVED AND UNJUST ENRICHMENT

105.

Named Plaintiffs reallege and incorporate the allegations set forth in paragraphs one through ninety-seven as if set forth herein verbatim.

53

106.

Blue Line entered into contracts with counties in Georgia to install, operate, monitor, prepare and mail citations, collect civil penalties from owners of vehicles registered in Georgia for alleged violations of the School Zone Electronic Enforcement Statute, O.C.G.A. § 40-14-18.

107.

Blue Line mailed each class member fake citations that accused each of owning a vehicle that was speeding, even though that is not a crime in Georgia.

108.

Blue Line collected from Plaintiffs and Class Members unauthorized and illegal penalties, electronic processing fees and credit card fees.   Plaintiffs and Class Members did not legitimately owe anything to Blue Line or the local governments with which it had contracts.

109.

Blue Line implemented a standardized billing and collection practice that automatically added a processing fee of $25 to every citation without lawful authority.

110.

Blue Line has no lawful claims to the funds it has collected from Plaintiffs and Class Members.  Blue Line's compensation is derived solely from payments collected, a forbidden *de facto* fee system. O.C.G.A. § 40-14-18, as written and as applied by Blue Line, promotes unlawful conduct and corruption.

111.

Blue Line wrongfully collected from Plaintiffs and Class Members and retained for  itself more than 35% of funds that were only to be used "to fund local law enforcement or public safety initiatives," as mandated by O.C.G.A. § 40-14-18(m).

112.

Blue Line wrongfully charged Plaintiff Dunn and other Class Members and retained for  itself charges for use of credit cards not authorized by law.

113.

Blue Line has been unjustly enriched at the expense of Plaintiffs and Class Members.

114.

As a matter of equity and good conscience, the Plaintiffs and Class Members are entitled to a refund of all funds wrongfully collected by Blue Line. Demand has been made for same.

115.

The Plaintiffs and Class Members are entitled to expenses of litigation including reasonable attorney fees due to the bad faith conduct of Blue Line. O.C.G.A. 13-6-11.

116.

Blue Line's actions showed willful misconduct, malice, fraud, wantonness, oppression or that entire want of care that would raise a presumption of conscience indifference to consequences.  Blue Line is liable to the named Plaintiffs and all members of the Class for exemplary damages in an amount sufficient to punish Blue Line and deter Blue Line from further like wrongful conduct.

WHEREFORE, having stated their Second Amended Class Action Complaint, Plaintiffs pray as follows:

1)    That process issue and be served on Defendant in accordance with Georgia law;

2)    That O.C.G.A. § 40-14-18 be declared unconstitutional as written and as applied.

3)    That this Court certify the Class and appoint Plaintiffs as Class representatives and appoint Plaintiffs' counsel to represent the Class;

4)    That the Plaintiffs and all Class Members recover all monies collected from them by Blue Line, together with interest;

5)    That the Plaintiffs and all Class Members recover exemplary damages sufficient to punish Blue Line and to deter Blue Line from further like wrongful conduct;

6)    That Plaintiffs and Class Members recover expenses of litigation, including reasonable attorney fees;

7)    That Plaintiffs and Class Members have trial by jury; and

8)    That Plaintiffs and Class Members have such further relief that the Court deems just.

Respectfully submitted, this ___ day of _____, 2024.

*s/ John C. Bell, Jr.*
John C. Bell, Jr. (Ga. Bar No. 048600)
Pamela S. James (Ga. Bar No. 389015)
**THE BELL FIRM**
PO Box 1547
Augusta, Ga  30903-1547
john@bellfirm.net
pam@bellfirm.net

57

*/s/ John B. Manly*
John B. Manly (Ga. Bar No. 194011)
James E. Shipley, Jr. (Ga. Bar No. 116508)
**MANLY SHIPLEY, LLP**
Post Office Box 10840
Savannah, Georgia 31412
(912) 495-5360
john@manlyshipley.com
jim@manlyshipley.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with Local Rule 7.1(D) as it has been prepared using Times New Roman 14-point font.

 *s/ John C. Bell, Jr*
John C. Bell, Jr.
Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the forgoing **SECOND AMENDED CLASS ACTION COMPLAINT**, upon opposing counsel by with the Clerk of Court using the CM/ECF system, which will automatically send electronic mail notification of such filing to the following counsel of record:

Travis A. Knobbe, Esquire
Matthew N. Foree, Esquire
Lucas B. Zavoli, Esquire
FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA   30339

This ___ day of _____, 2024.

 *s/ John C. Bell, Jr*
John C. Bell, Jr.
Counsel for Plaintiffs